## WILLIAM STANBERRY

*v.*

## MATTHEW MOORE.

1. NEW TRIALS — *how many may be granted* — *construction of the statute.* The statute which provides that no more than two new trials shall be granted in the same case, has special application to suits in the circuit court, and does not operate to restrict the power of the appellate court in reversing judgments in the same case any number of times. In this case, a third verdict was set aside by this court because it was not supported by the evidence.*

2. AMENDMENT OF PLEADINGS — *erasures and interlineations.* The practice of amending pleadings by erasures and interlineations ought not to be tolerated by the courts. A paper thus disfigured should be stricken from the files.

3. AGENCY — *negligence.* A person having title papers to land placed in his hands as agent and attorney, with authority to effect a sale of the land, intrusted the papers to a third person for examination, and with a view of making a sale to him. The party so intrusted with the papers, being charged with some crime, absconded and took the papers with him: *Held,* this act of the agent, which resulted in a loss of the papers, was not negligence on his part, so as to impose any liability upon him therefor.

APPEAL from the Circuit Court of Tazewell county; the Hon. CHARLES TURNER, Judge, presiding.

* See *Silsbe* v. *Lucas et al.* 53 Ill. 479.

The opinion states the case.

Messrs. COHRS & SALTONSTALL, for the appellant.

Messrs. WILLIAMS & ELLIOTT, for the appellee.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

There have been three verdicts in this case, and, if we could find any evidence to sustain the judgment appealed from, we should be reluctant to disturb it. The statute, which provides that no more than two new trials shall be granted in the same case, has special application to suits in the circuit court. In *Wolbrecht* v. *Baumgarten*, 26 Ill. 291, this court held, that there might be a case where a third verdict might be set aside by this court, where there was no evidence to support it, or for gross misdirection of the court as to the law. In this regard our power is not restricted by any statutory provision, and the ends of justice are often subserved in setting aside verdicts which have no foundation upon which to rest.

The declaration in this case, containing a number of special counts, and the common counts in *assumpsit*, was filed in May, 1867. It was twice amended, and, at the special November term, 1868, a demurrer was sustained to the special counts and overruled to the common counts. Leave was then given to amend, but, from a careful examination of the record, we can not ascertain that any amendment was made. Counsel for appellee say that the declaration was amended "by proper erasures and interlineations," and was re-filed January 19, 1869. The clerk also certifies to the re-filing, but this certificate forms no part of the record. There are neither erasures nor interlineations in the record. In fact, the record shows that no amended declaration was filed subsequently to the term at which the demurrer was sustained. We can not forbear the remark that the practice of making amendments, by erasures and interlineations, is a bad one, and ought not to be tolerated

by the courts. A paper thus disfigured ought to be stricken from the files.

What is the evidence to sustain a verdict under the common counts? Appellee claims that, in 1856, he, as attorney in fact of one Hutchinson, with power to sell, had in his possession certain papers, evidencing title to lands in Texas, called "head-rights;" that he made a sale of these papers, and executed a conveyance to one Prettyman, and took his note for $225, in payment, on the condition that appellee should procure from Hutchinson's heirs a complete release of all their interest in the "head-rights," and deliver it to Prettyman, as Hutchinson had died pending the negotiation between the parties.

This note was left with appellant; according to the evidence of appellee, until the release was obtained, and if it was not procured the note was to be given to Prettyman. Appellant testified to the same purport, and, in addition, that if the release was not satisfactory to Prettyman, the note was to be given up. Prettyman testified that the condition of the note was, that it was not to be paid until the title of Hutchinson's heirs to the land was vested in him; that the release or confirmation was to be satisfactory to him; and that the paper presented to him was worthless, and in no sense a confirmation to him of the title of the heirs.

Appellant then gave up the note to Prettyman. In so doing he violated no duty to his client, but acted strictly in accordance with instructions. He received no money from Prettyman; and if under any legal liability, it could not be enforced under the common counts.

When appellant returned the note to Prettyman, he received from him the title papers to the "head rights." Having been authorized to effect such sale as he could, he intrusted the papers to one Crosson, for examination, and with a view of making a sale to him. Crosson, about this time, was charged with some crime, and absconded and took the papers with him. This act of appellant, which resulted in a loss of the papers,

was in good faith and for the best interests of his client. Even if the pleadings permitted, it would be marked injustice to hold him liable for such conduct. The loss was a result entirely unforeseen, and against which ordinary prudence could not have provided.

In the special counts of the declaration, to which a demurrer was sustained, it was intended to charge the appellant with negligence, or breach of duty. Without proof of these he could not be held liable. The principal duties of an attorney or agent are care, skill and integrity. There is no proof of deficiency in any of these requisites; and if the pleadings were formal and correct, no principle of law would render appellant liable for his conduct in the premises.

The length of time which has elapsed since the pretended liability foreshadows the character of this claim. There were ten years between the alleged misconduct and the commencement of this suit.

The judgment is reversed and the cause remanded.

*Judgment reversed.*