## THE ILLINOIS CENTRAL RAILROAD COMPANY

*v.*

## ISRAEL R. PATTERSON.

1. NEW TRIALS—*how many may be granted.* The provision in the Practice act, that no more than two new trials upon the same grounds shall be granted to the same party in the same cause, applies only to trial courts and not to the appellate courts.

2. SAME—*presumption in favor of finding.* A circuit judge who tries a case is not required to make the same presumptions in favor of the findings of the jury, that this court is compelled to do, as he sees and hears all that occurs on the trial and acts on evidence heard and witnesses seen, which is denied to an appellate court.

3. NEGLIGENCE—*contributory—when it will prevent a recovery.* Where an engineer on a railway train who, by his gross negligence in running the train at much greater rate of speed than his written instructions required, and this over a part of the road known by him to be in bad condition, when his duty was to slacken the speed, was injured, his own negligence contributing to the injury, if not producing it, it was *held* no recovery could be had by him of the company, even if it was also guilty of negligence.

4. This court has often announced that a plaintiff is not precluded from recovering even though he has been guilty of slight negligence, when the defendant has been guilty of gross negligence. But no case has been found holding that a plaintiff who has been guilty of gross negligence contributing to his injury, may recover, whatever may be the degree of negligence on the part of the defendant.

APPEAL from the Circuit Court of Ogle county.

Mr. J. M. BAILEY, and Mr. JAMES I. NEFF, for the appellant.

Mr. WILLIAM BARGE, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

When this case was before us at a former term (see 69 Ill. 650) the judgment was reversed, because the verdict was not sustained by the evidence. After being remanded, and tried with a similar result, it comes again before us for hearing on appeal.

It is urged that the statute has prohibited the court from reversing, as by so doing it would be to grant more than two new trials to appellant in this case. The 57th section of the Practice act provides that, "No more than two new trials upon the same grounds shall be granted to the same party in the same cause." Appellee refers to several cases decided by the Supreme Court of Indiana, which hold, under their statute, that "When two new trials have been granted to.a party, whether by the court below on motion, or by reversal in this court on appeal, the judgment can not be reversed, though error may have been committed on the last trial." We do not have the Indiana statute before us and are unable to say whether the two statutes differ in their provisions, although we presume they do. But even if they are alike in all of their provisions, we having given a different construction to our statute, which has been announced and adhered to in several cases, running through a series of years, and being entirely satisfied with the construction we have placed on our statute, we must decline to overrule our former decisions merely to conform them to the construction given by that court, although we have a high respect for its decisions.

The revision of 1874 has changed the section, previously in force, in the statutes. The section formerly in force in general terms prohibited the granting of more than two new trials to the same party in the same case. Under that section the question was before us in *Wolbrecht* v. *Baumgarten*, 26 Ill. 291, *Silsbe* v. *Lucas*, 53 id. 479, and *Stanberry* v. *Moore*, 56 id. 472. And in the last of these cases it was held that the

statute does not operate to restrict this court in reversing judgments in the same case any number of times. And a third verdict was set aside in that case, because it was not sustained by the evidence,—thus virtually holding that section had no application to the practice in this court. The portion of the chapter on practice, in which this section is found, has no reference to practice in this court, and we are satisfied, when adopted, that it was the purpose that it should apply only to practice in the circuit and other courts trying the facts, and not to the appellate courts. We, therefore, under these decisions, shall proceed to consider the evidence in this case.

Although there are some more witnesses testifying in the case on the last trial than on the trial in the case when it was formerly before us, still the case is not, in the view we take of it, changed in any essential particular. It then appeared almost beyond doubt that the evidence proved that appellee was guilty of gross, if not wanton, negligence, contributing to, if not producing, the injury. There was on the former trial five witnesses who testified to the great speed of the train between Mendota and LaSalle. On the last trial there were seven who all agree as to the very high rate of speed. Some persons timed it, and found that by the watch and the mile-posts the train ran the last mile, before the engine left the track, in one minute and twenty-six seconds—very nearly at the rate of forty-two miles an hour. By his time-card appellee was allowed to run twenty-four miles an hour, and in places where the track was not in good repair he was required to run at a slower rate of speed, and in cases of doubt to take the safe course.

From the evidence of a number of engine-drivers, it is apparent that the person in charge of the engine can certainly know the condition of the track over which he runs. That is clearly indicated by the motion of his engine. All agree that the track between these two points was in bad condition, and appellee swears he knew it was near the point where the

engine left the rails.    But he testifies that he did not know of this flattened rail.    Suppose this to be true, was he justi-fied in taking the risk in disobedience to his orders by increasing the speed instead of reducing it at a place where he knew the road was in bad condition, and where he knew he was required to reduce the speed?    Surely not.

Had there been injury to passengers, resulting from this accident, and they had sued to recover damages, would any person hesitate to say the company were liable for the reck-less disregard by the engine-driver of his printed instruc-tions?    Can any one say, that it is at all probable that this engine would have left the rails had the speed been no more than twenty-four miles an hour?    And if it could be so said, would not all persons say it was negligence not to reduce the speed, as the engine-driver was required to do under his instructions, knowing, as he surely did, the bad condition of the track?

It is true, he says he was running at the rate of thirty miles an hour, and the fireman, who was on the engine with him, testifies to the same thing.    But they both admit they did not, previous to or at the time of the occurrence, think of the rate, but only thought of it afterwards.    This surely can not be a very reliable mode of ascertaining the fact, but if it was true, it would be a fourth faster than he was authorized to run and at a place where he should have reduced the speed.    This was gross negligence, which mani-festly contributed to the accident, and for it he should be held responsible.    But the evidence clearly shows that the train was running at, we think, a much greater speed.    The six passengers who testified, and are wholly disinterested, state that the speed was so great as to attract their attention, and a number of them say they were never on a train when it was running faster than this was at that time; that it rocked violently and created alarm in the minds of some of them, and attracted the attention of all of them.    Nor was the conclusion reached after the accident; but it was spoken

of by a portion of them previous to the occurrence, and it led to more than one or two persons timing its speed. From their testimony we are forced to the conclusion that the speed of the train could not have been less than at the rate of over forty miles an hour. And the section foreman corroborates the other witnesses as to its speed.

But it is said that the evidence is conflicting, and the court should not, and seldom does, reverse when that is the case. On one point, and the most important point in the case, there is no conflict. It stands admitted that the train was running at a higher rate of speed than was allowed by the instructions to engineers; that the road at the place of the accident, and for some distance in each direction, was in bad condition, and that fact was known to the engineer, and that, in violation of instructions, he did not slacken the speed, but increased it above card-time. About these several matters there is and can be no dispute. And in such palpable violation of instructions and duty, the verdict is clearly against the evidence and without the shadow of evidence to support it. It is not a case of conflict, but it is a clear case of the want of evidence to support the finding. The evidence shows, we think, beyond all doubt, that there was not only contributory but gross if not willful negligence on the part of the engineer. It was such negligence as to preclude him from recovering, even if it were shown that the company was guilty of gross negligence.

It has been announced many times by this court that a plaintiff is not precluded from recovering even if he has been guilty of slight negligence, when the defendant is guilty of gross negligence; but no case in this or any court, so far as our researches have extended, has ever held that a plaintiff who is guilty of gross negligence may recover, whatever the degree of negligence on the part of the defendant. That the evidence shows gross negligence on the part of the appellee we do not entertain the slightest doubt, and so long as we are required to review the evidence in causes brought to

this court, we must, when it produces such convictions, reverse the judgment, although the jury have the better means of giving proper weight to evidence, and notwithstanding the judge trying the case, when he thinks the verdict wrong, should grant a new trial. We fully appreciate the fact that the circuit judge is not required to make the same presumptions in favor of the findings that we are compelled to do. He sees and hears all that occurs on the trial, which we do not, and hence he acts on evidence heard and witnesses seen, both of which is denied to us ; but we, as a general rule, suppose, in overruling a motion for a new trial he does so because he believes the finding is proper. But cases do occur in which our convictions are so strong that the verdict is wrong that we feel compelled to disregard the decision of the circuit judge in overruling a motion for a new trial. In any event we are wholly unable to indorse the finding of the jury.

Even if the notice was given, as is contended, to the person charged with the repair of the track, still appellee is prohibited from recovering by reason of his gross negligence in running the train. As the verdict is, we think, clearly against the evidence, the judgment must be reversed.

*Judgment reversed.*