## Wisconsin Central Railroad Co. v. John Wieczorek.

1. RAILROADS—*Actions Against for Damages to Real Property.*—In an action for damages against a railroad company for noise, disturbance and the vibration of the ground, causing the ceilings and walls of the houses to crack and fall, by the passing of engines and loaded trains,

and the consequent depreciation in value of the premises, evidence of a depreciation of rental value of the premises is permissible as bearing upon the true issue of whether there has occurred a depreciation in the market value of the property, although of itself it may not, for temporary causes, or for causes entirely foreign to the construction and operation of the railroad, conclusively establish any such depreciation.

2.  PLEADING—*Amendments, How Made.*—Amending by alterations on the face of the pleading ought not to be permitted.

**Memorandum.**—Trespass on the case for damages to real property. Error to the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in this court at the October term, 1893, and affirmed. Opinion filed November 27, 1893.

The statement of facts is contained in the opinion of the court.

H. S. BOUTELL and K. K. KNAPP, attorneys for appellant.

M. SALOMON, attorney for appellee.

MR. PRESIDING JUSTICE SHEPARD, DELIVERED THE OPINION OF THE COURT.

Defendant in error was the owner and in possession of three lots of land, situated on the south side of Rebecca street, at the southwest corner of that street and Paulina street, in Chicago, and having a frontage of seventy-two feet in width on said Rebecca street.

At the time he bought the property in 1883, two frame two-story houses stood upon the lots, one of which he occupied, in part, as a dwelling, and the rest he rented to tenants, for residence and business purposes.

It does not clearly appear when it was that the plaintiff in error acquired all the lots on the opposite or north side of Rebecca street for its railway right of way, 100 feet in width, and constructed its railway thereupon, but it was some time during the years 1885 to 1887. To facilitate the construction of said railway along and upon said right of way, all the buildings on the lots on the north side of Rebecca street were torn down or moved off, and the neighborhood to the extent of the population living on said lots

on the north side of Rebecca street, was depopulated. It appears that the lots belonging to the defendant in error were somewhat less than a hundred feet in depth, and that close to the alley bounding them on the rear or south end thereof, a large number of other railway tracks, some twenty in number, had been previously constructed and were in operation by other railroad corporations. Therefore it was that after the plaintiff in error constructed the railway complained of, the lots in question became shut in by extensive systems of railroad tracks on two sides of them, and were accessible by Rebecca street alone, except by crossing one or the other of said systems of railway tracks.

Whether the obstruction of Paulina street and other streets running north and south from Rebecca street, by the tracks of the plaintiff in error crossing the same, whereby the former means of access to and from the lots in question were interfered with and impaired, produced any special injury for which a recovery in damages could be had, need not be discussed, for the reason that no such injury is declared upon. The only injuries set forth in the declaration are noises and disturbances, and the vibration of the ground, causing the ceilings and walls of the houses to crack and fall by the passing of engines and loaded trains, and the consequent depreciation in value of the premises.

As originally filed, the declaration alleged that the railroad was constructed and operated in Rebecca street, and set forth injury by reason of "blocking the street in front of said plaintiff's real estate," in addition to the other special injuries above mentioned. From the evidence it clearly appeared that no part of the railroad was constructed within Rebecca street, and that said street was in no way "blocked" by the railroad; and on the trial leave was given to amend the declaration by inserting words fitting the true location of the construction and operation of the road upon and along property adjoining Rebecca street.

The words containing that amendment and where to be inserted in the declaration, appears in the bill of exceptions, but if in fact reduced to writing and filed in the cause, it is not made to appear.

There was no amendment made to the declaration, or leave therefor granted, upon which a recovery could be maintained for the obstruction of any other street leading to the property in question, although there was evidence tending to show that such obstruction existed. So that as the declaration stands as amended by the leave given therefor, the only question is, does the evidence warrant the sustaining of the judgment for damages resulting to the defendant in error from the noise and disturbance, and vibration of the ground, and consequent injury to the buildings, caused by the construction and operation of the railroad upon and along its private right of way north of and adjoining the north line of Rebecca street.

The plaintiff in error offered no evidence, and the cause was submitted to the jury upon the evidence introduced in behalf of the defendant in error, alone, and upon instructions given on the part of the plaintiff in error, none being offered on the part of defendant in error.

The assigned errors are confined to:

First. The admission of improper evidence on the part of plaintiff.

Second, third, fourth and fifth. Refusal by the court to instruct the jury to find the defendant not guilty; to dismiss the suit; to set aside the verdict and grant a new trial, and in rendering judgment on the verdict.

No error was assigned that the damages were excessive.

The evidence must be said to clearly establish the fact that the passing trains on the road of the plaintiff in error produced a very considerable physical disturbance to the houses in question.

Uncontradicted witnesses, and for aught we know, reliable ones, testified to facts that render such a conclusion indisputable upon this record.

One Loss, a tenant of plaintiff, who occupied a part of the corner house as a dwelling and butcher shop for about two years before the railroad was built, and for about three months after it began to be operated, testified that the running of the trains shook the house "so we could not sleep in the

night, and it·was the same in the day," and that "the meat fell off the hooks because it (the house) was shaking."

Mary Moroski, another tenant, testified that the noise was so great no one could sleep in the house, and they were afraid to live there because there were so many trains passing in front and rear of the property.

Joseph Burkhart testified that he lived in one of the houses three years and nine months, and moved out about four months after the railroad was operated, because the plastering was jarred off by a passing train and nearly killed his child, lying in a cradle, and that the house shook whenever trains passed.

The condition of the property and the effect upon it produced by the construction and operation of the railroad, in the way shown by the testimony of these witnesses, was such as, under the declaration, made the subject of the extent of damage a proper subject of inquiry by the jury.

It brought the case clearly within the rules laid down in Rigney v. City of Chicago, 102 Ill. 64, and Railroad Company v. Scott, 132 Ill. 429; see, also, Railway Co. v. Leach, 41 Ill. App. 584.

It was made to appear by the testimony of witnesses in behalf of the plaintiff, that the renting value of the houses fell off very materially soon after the railroad was constructed, and almost entirely ceased within a few months after the road began to be operated.

It is not clear from the evidence to what extent that result was reached by the construction and operation of the road, but it is apparent that it was contributed to in some extent, by such construction and operation. Nor can it be said from the evidence how far that result was attained by noise separated from the jarring or vibration produced by passing trains.

The evidence of a depreciation of rental value of the premises was permissible, as bearing upon the true issue—whether there has occurred a depreciation in the market value of the property—although of itself it may not, for temporary causes, or for causes entirely foreign to the con-

struction and operation of the railroad, conclusively establish any such depreciation. It was, however, proper matter to go to the jury in connection with other evidence tending to show the depreciation in value claimed to have occurred. Had the defendant offered a proper instruction covering the question of the bearing of such evidence upon the real issue involved, the court would, doubtless, have given it, but no instruction bearing upon that subject was offered.

The jury answering a special question submitted to them by the court, said they did not consider, in arriving at their verdict, that the property of the plaintiff was damaged by the removal of the houses from the north side of Rebecca street. For such depopulation no action would lie, and the jury properly refused to consider it in getting at their verdict.

If there was evidence which reached the jury through the fact that witnesses included in their answers to proper questions the idea of damages to the lots because of the obstruction of Paulina street, the proper way to have removed the effect of such testimony was by motion to strike it out or exclude it from the jury, or by instruction, neither of which was done. So far as such evidence reached the jury it was in connection with evidence of other causes of injury, such as noise, jarring of the ground and shaking of the houses, and we are unable to say whether, if at all, the jury were induced to arrive at their verdict by the consideration of any but proper elements of damage.

While, as we have indicated, the answers of some of the witnesses were too broad, the questions to which the answers were given were proper, and if defendant chose not to avail itself of its right to have the unresponsive and improper testimony struck out, we will not here, for the first, undertake to remedy the omission, when to do so would necessarily wholly reverse the cause. It would be much more acceptable to us, considering the whole case as contained in the record, to sustain a judgment for a considerably less sum than that rendered, but there is, as already said, no error assigned upon which we are at liberty to reverse the cause because of excessive damages.

The judgment of the Circuit Court will therefore be affirmed.

### Mr. Justice Waterman.

As the declaration was not in fact amended, the judgment should be reversed. A mere leave to amend an insufficient declaration will not warrant a recovery under it.

### Mr. Justice Gary.

There is a technical error in this case, so purely technical that I can not believe it right to reverse on account of it.

There was leave to amend the declaration, but no actual amendment was made, nor can it be told on this record where the proposed amendments were to be placed in the original declaration. If it could they still would be no part of the declaration. Ogden v. Town of Lake View, 121 Ill. 423. "This court can not go out of the pleadings to ascertain the character of the cause of action." Hart v. Tolman, 1 Gilman, 1.

Amending even by alterations on the face of the pleadings ought not to be permitted. Weatherford v. Fishback, 3 Scam. 170; Stanberry v. Moore, 56 Ill. 472.

Regularly the pleading should be re-engrossed.

When, therefore, the motion for a new trial stated as one of the grounds that "the evidence does not sustain the declaration, but is materially variant therefrom," it stated a good reason, technically, for a new trial. But that ground was removable by, in fact, making the amendment, which it is clear the parties considered as made. For this technicality the judgment ought not to be reversed.