## Lucy N. Hampton, Administrator, Appellee, v. Chicago & Alton Railroad Company, Appellant.

1. CONTRIBUTORY NEGLIGENCE—*what constitutes.* The violation by a servant of a rule of his master made for his protection constitutes contributory negligence which will bar a recovery if such violation concurred with the negligence charged against the master in causing the accident complained of.

2. MASTER AND SERVANT—*what essential to establish abrogation of rule.* In order to establish that a rule adopted by a master for the protection of his servant has been abrogated through habitual disregard, actual or constructive notice of such habitual disregard must be brought to the master.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the November term, 1907. Affirmed. Opinion filed April 21, 1908.

PATTON & PATTON, for appellant; F. S. WINSTON, of counsel.

THOMAS D. MASTERS and HARDIN W. MASTERS, for appellee.

Mr. Justice Puterbaugh delivered the opinion of the court.

This is an appeal from a judgment of the Circuit Court rendered in an action on the case by appellee as administratrix of the estate of William H. Hampton, deceased, against the appellant for the recovery of damages, for wrongfully causing the death of her intestate. The declaration charges in substance that the defendant negligently permitted the cross ties in the track of its railroad to become rotten, the spikes to become loose and the track to become out of repair, so that while Hampton, who was in its employ as a locomotive engineer, was driving an engine over the track it became derailed by reason of such condition of the track, whereby he was killed.

The general issue was filed, a trial had and judgment rendered against the defendant for $5,500 to reverse which this appeal has been perfected by the defendant.

The evidence shows that appellant operates a railroad consisting of a main line running from Chicago to East St. Louis and of several branch lines, one of which is known as the "Peoria Branch." William H. Hampton, the intestate, had been in the employ of appellant company for about two years prior to the day of his death. In the month of June, 1906, he was promoted from the position of fireman to that of engineer. He had no regular run but most of the time had been working with construction trains principally on the main line of appellant's railway between Bloomington and Springfield, and occasionally between Bloomington and San Jose on the Kansas City division and between San Jose and Springfield on appellant's Peoria Branch. The Peoria Branch and the Kansas City division met at San Jose, where there was maintained by the company a number of switch tracks, but no turntable, so that engines proceeding from Bloomington to Peoria reaching San Jose head on, would necessarily have to run backwards from San Jose to Peoria. The branch line from Peoria to San Jose consisted of but

a single track. Hampton had, as engineer, occasionally driven his engine over the same.

On the morning of October 21, 1906, a train composed of an engine, tender and caboose, the crew of which consisted of Hampton as engineer, a conductor and two brakemen, left Bloomington for Pekin. Upon arriving at San Jose, Hampton backed his engine around the "Y" from the Kansas City Branch to the Peoria Branch and proceeded northward toward Pekin. When the train had run about four miles the tender of the engine suddenly lurched, left the track and ran upon the ties for from fifty to one hundred feet at which point the engine also became derailed, tearing up the ties and wrecking the roadbed for about 100 feet and then turned over, killing Hampton.

The evidence adduced by the plaintiff tended to show that on the day of and before the accident the track at the point where the derailment occurred was not in a reasonably safe condition in that a large number of the ties were rotten; that many of the spikes were loose, and a number of the ties had no spikes, and that immediately after the derailment the rails were spread at the point where the wheels left them, and further that such defective condition of the ties had existed for some time prior to the accident. The evidence introduced by appellant tended to show that at the point in question the track and ties were in a reasonably safe condition and that there were no loose spikes and spreading rails; that the tender was caused to leave the track for the reason that the engine was backing at a high rate of speed which caused the water in the tank of the tender to surge from side to side thereof, and so shift the weight that one wheel left the track, causing the derailment of the tender.

The evidence for the appellant also tended to show that upon the time card issued by the company, in force June 3, 1906, there was printed the following rule for the government of trains and trainmen: "On branch lines an engine running backward must reduce

speed to ten or less miles per hour according to the condition of the track; the object being to obtain absolutely safe movement," and that Hampton had received a copy of such time card on June 2, 1906.

The appellee in rebuttal introduced evidence tending to show that the rule in question had never been in force and further that engines had habitually for from six months to a year prior to the date of the accident been run over the Peoria Branch at a rate of speed from fifteen to forty miles an hour.

The following controverted questions of fact were thus presented for the determination of the jury: (1.) Was the track defective as alleged. (2.) Was the proximate cause of the derailment the condition of the track or the speed at which the train was being run? (3.) Was the rule invoked in force at the time or had it been so frequently violated for such length of time that appellant could have by the exercise of ordinary care ascertained its non-observance whereby it could be said to have been abrogated? (4.) Was Hampton in the exercise of ordinary care at the time of the derailment?

While the evidence relating thereto is in serious conflict we cannot say that the jury were not justified in finding that the track was in the defective condition charged and that such condition and not the speed of the train was the proximate cause of the derailment of the tender. Therefore the existence or abrogation of the rule referred to need only be considered upon the question of due care upon the part of the deceased. If the rule had not been abrogated the violation thereof by the deceased constituted negligence and if such negligence concurred with that of appellant in causing the derailment and consequent injury to the deceased, it is clear that appellee cannot recover. I. C. R. R. Co. v. Hauck, 72 Ill. 285; I. C. R. R. Co. v. Patterson, 93 Ill. 290; Abend v. T. H. & I. Ry. Co., 111 Ill. 202; L. S. & M. S. Ry. Co. v. Parker, 131 Ill. 565.

There was evidence tending to show that the jury

were not unwarranted in finding that the rule had been violated by the engineers on a number of occasions. It was not shown that appellant had actual knowledge of such violation. It was therefore essential before an abrogation could be presumed that constructive notice to appellant be shown. The law applicable was correctly stated to the jury by the fourth instruction offered by appellee by which they were told that if the defendant company had before the occurrence of the accident made and published the rule in question but that such rule had been openly, commonly and habitually violated and disregarded prior to the accident and for such length of time that the defendant might reasonably have been expected to know of such violation and that the defendant took no action to enforce the rule, then they would be warranted in finding that such rule was not in force at the time of the accident and injury.

Upon this question Milton Willis testified that for a month prior to October 21, 1906, he had frequently observed freight, construction and gravel trains running backward on the Peoria Branch at the rate of from 15 to 20 miles an hour and that there would be periods when this would be almost of daily occurrence; Samuel Lawson that he had seen freight and gravel trains propelled backward on the Peoria Branch on an average of one a day for a year prior to October 21, 1906, at the rate of from fifteen to twenty miles an hour; Eugene Bailey that he had seen at least one freight or passenger train running backward over the Peoria Branch every day for a year at the rate of fifteen or twenty miles an hour; Amos Crawford that he saw about two a week for four weeks prior to October 21, 1906, running backward over the Peoria Branch at the rate of fifteen or twenty miles an hour; Harry Morrison testified that he saw trains running backward as often as twice a week for two or three weeks prior to October 21, 1906, at fifteen to twenty miles an hour; Charles Bright that he had seen five or six gravel

trains running backward prior to October 21, 1906, within a period of a month or six weeks at the rate of from fifteen to twenty miles an hour; George Davis that he had seen trains during the summer of 1906 running backward very frequently on an average of three a week at the rate of eighteen to twenty miles an hour.

It is insisted that the foregoing evidence should have been excluded for the reason that of itself it did not tend to prove any habitual violation of the rule; that there was no evidence tending to prove any knowledge of or notice to appellant of any habitual violation or that the deceased had any knowledge thereof. If the jury believed the testimony of these witnesses they were warranted in finding that the rule was abrogated by habitual violations and so frequently and for such length of time that appellant could properly be held to have had constructive notice thereof. This question and the further one as to whether the violation of the rule in force contributed to the accident were properly submitted to the jury with the other questions of fact in issue and there was evidence tending to support their findings.

We do not think it was essential to show that the deceased knew of the abrogation of the rule. If the rule was for any reason not in force and effect deceased was not bound thereby.

We find no prejudicial error in the rulings of the court upon the evidence. The instructions given fully and fairly state the law applicable. The principles announced in appellant's refused instructions "A" and "B" were fully covered by the too numerous instructions given in its behalf.

The judgment of the Circuit Court is affirmed.

*Affirmed.*