Paulina Norkevich, Administratrix of the Estate of
  Mike Norkevich, Deceased, Appellee, v. The Atchi-
  son, Topeka and Santa Fe Railway Company,
  Appellant.

Gen. No. 34,887.

1

2

Opinion filed October 9, 1931.

EMMET TRAINOR, F. W. MILLER and A. T. BELSHÉ, for appellant; E. E. McINNIS, of counsel.

CHARLES E. CARPENTER, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

In this case there was a verdict returned finding the defendant guilty and assessing the plaintiff's damages at the sum of $25,000. Judgment was entered on the verdict and the defendant has appealed.

The action was brought under the Federal Employers' Liability Act, Cahill's St. ch. 114, ¶ 321 *et seq.*, to recover damages for the wrongful death of Mike Norkevich, who was killed while inspecting air brakes on one of the defendant's trains in its Corwith yards, in Chicago. There have been three trials of this cause. In each there was a verdict and judgment for the plaintiff. We reversed the judgments in the first and second trials upon the sole ground that the verdicts were against the manifest weight of the evidence.

The defendant contends that "the evidence offered at the third trial of this case in the lower court was substantially the same as that offered at the first and second trials, and inasmuch as this court reversed the previous verdicts and judgments thereon on the ground that they were 'against the manifest weight of the evidence,' the prior decisions constitute the law of the

case'' and will operate as *res adjudicata*. *City of Chicago v. Lord*, 279 Ill. 167, cited in support of this contention, was a non-jury case and has no application to the instant proceeding. It was decided before the great case of *Mirich v. Forschner Contracting Co.*, 312 Ill. 343, wherein it was held (*inter alia*) that section 120 of the Practice Act, Cahill's St. ch. 110, ¶ 119, providing that the judgment of the Appellate Court reversing that of the trial court with a finding of facts shall be conclusive, applies only to cases where a jury is waived in the trial court or where the trial court would have been justified in directing a verdict because the evidence did not tend to establish a cause of action, and that in actions at law tried by jury, where the evidence is conflicting and that for the plaintiff unquestionably tends to establish a cause of action, the Appellate Court is not authorized, by section 120 of the Practice Act, to reverse a judgment for the plaintiff and make a finding of facts without remanding the cause, as such procedure would be an exercise by the Appellate Court of the functions of a jury. In each of the former appeals, in making our ruling, we did not question the fact that the evidence of the plaintiff made out a prima facie case, and in the instant appeal the plaintiff made out a prima facie case. Under the law (*Mirich v. Forschner Contracting Co., supra*), we have no right to make a finding of facts in a case like the present one, and in any case where we find the verdict to be against the manifest weight of the evidence it is our duty to reverse and remand the cause, and in such event the appellee has a right to have another jury pass upon the case. If an appellee, upon the new trial, were unable to produce any additional evidence, affording him a new trial would be but a naked right, devoid of substance, if the defendant's doctrine of *res adjudicata* were to be sustained. Were we to uphold

the contention of the defendant, our action in that regard would amount to a plain attempt to violate the plaintiff's right of trial by jury, and it would run counter to the purpose and spirit of the decision in *Mirich v. Forschner Contracting Co., supra,* wherein the Supreme Court emphatically declared that appellate courts have not the power to violate or abridge the constitutional right of trial by jury. The defendant cites no case that supports its contention, while, on the contrary, many might be cited in which appellate courts of this State have reversed judgments upon the ground that the verdict was against the manifest weight of the evidence but upon a subsequent appeal have refused to reverse the judgment upon that ground, for the reason that where there have been two or more verdicts in a case for the same party and there is any evidence to sustain the judgment appealed from, appellate courts are very reluctant to disturb it.

The defendant contends: "The record is barren of any facts which show how the accident occurred. There were no eyewitnesses to the occurrence, nor did Norkevich explain how it happened prior to his death. . . . In view of the lack of any evidence as to what Norkevich was doing when the accident occurred, the conclusion is inescapable that the jury's verdict was based wholly upon conjecture and speculation," and that the verdict must therefore be reversed. This contention is based upon the assumption that because there is no direct evidence as to how the deceased was injured the verdict of the jury was therefore necessarily based upon speculation and conjecture. There is, of course, no merit in this contention. The plaintiff had the right to prove her case by direct or circumstantial evidence. In *Devine v. Delano,* 272 Ill. 166, the court said (pp.179–80): "There was no eye-witness to the accident, and hence the question whether deceased was knocked off by the post depends upon

the inferences to be drawn from the testimony. Circumstantial evidence is the proof of certain facts and circumstances in a given case from which the jury may infer other connected facts which usually and reasonably follow according to the common experience of mankind. (*State v. Avery*, 113 Mo. 475; 11 Am. & Eng. Ency. of Law,—2d ed.—502, note.) In criminal as well as in civil cases a verdict may be founded on circumstances alone. (*Slack v. Harris*, 200 Ill. 96; *Economy Light and Power Co. v. Sheridan*, id. 439.) A greater or less probability, leading, on the whole, to a satisfactory conclusion, is all that can reasonably be required to establish controverted facts. (1 Greenleaf on Evidence,—16th ed.—sec. 1; *Commonwealth v. Webster*, 5 Cush. 295; 11 Am. & Eng. Ency. of Law,—2d ed. —490.)'' (See also *Thomas v. Chicago, B. & Q. R. Co.*, 245 Ill. App. 632.) In the instant trial, witnesses for the plaintiff, for the first time, testified that plaintiff's intestate was a sober, industrious man and careful for his own safety. This evidence was not rebutted. In *Chicago, B. & Q. R. Co. v. Gunderson*, 174 Ill. 495, in passing upon the question of what caused the injury to plaintiff's intestate, the court held that the jury were justified in taking into consideration the instincts of the human individual prompting preservation of life and avoidance of danger. The plaintiff's intestate was employed by the defendant as an air brake inspector and was acting in that capacity when he was killed, on November 1, 1925, about 9:10 p. m. He was inspecting brakes on a 52-car train on track 13, in the defendant's yards, with two other brake inspectors, Peter Ongyak and John Fint. The rules of the defendant required two inspections of the brakes on each train before it left the yards, and there were also rules that governed these inspections. The first inspection is made with ''ground air,'' piped into the yards for this purpose. This inspection is made before the way-car or engine are coupled to the train. It is called ''ground

air" inspection. The second inspection, made after the engine and way-car are attached, using engine air, is called "road test" inspection. It is not necessary to state the details of the first inspection for the reason that Norkevich was killed during the second inspection. Strict rules govern the second inspection. The brakes are set and released by the engineer, using engine air, after the way-car and engine have been attached to the train. The head brake inspector is at the front end to couple on the engine and inspect brakes at the front end of the train. The rear brake inspector is at the rear end to couple on the way-car and to inspect brakes at the rear end. Then blue lights are placed on the front of the engine and rear of the way-car. The rear brake inspector was required, by the rules, to signal the head brake inspector that the way-car is coupled on. When the head brake inspector receives this signal he then signals the engineer to set the brakes, and the latter then sets the brakes. The head brake inspector then walks back of the engine some four or five car lengths, while the rear brake inspector walks forward from the way-car a like distance, each inspecting brakes at respective ends of the train to see that they set properly. If the rear brake inspector finds that the brakes at the rear set properly he signals the head brake inspector that the brakes at the rear end set. When he receives this signal the head brake inspector, from his position back of the engine, signals the engineer to release the brakes. When the brakes are released the head brake inspector walks back to the engine, examining the brakes on the way, to see that they release properly. At the same time the rear brake inspector walks back to the way-car and on his way examines the brakes to see that they release properly, the theory being that if the brakes set and release at the front and rear ends of the train, the brakes on the whole train will likewise function properly. When the head brake inspector arrives at

the engine, the rules require him to wait until he receives a third and final signal from the rear brake inspector that the brakes release properly and the rear end is ready. When the head brake inspector receives the signal he then, under the rules, removes the blue lights from the engine and gives a clearance card to the engineer, and the train is then, for the first time, turned over to the conductor and crew. Ongyak, the head brake inspector, testified that the deceased never gave him the final signal that the brakes were released at the rear end, but that notwithstanding that fact he removed the blue lights from the engine and gave a clearance card to the engineer and conductor, and the train then moved from the yard. That the plaintiff's intestate was engaged in the work of inspection just before the accident, is clear. In fact, certain evidence of the defendant shows that after the train stopped the deceased was engaged in that work. That this work required him to go between the cars is admitted. Immediately after the train left he was found about 25 car lengths back of where the engine stood before the train started. He was lying on the ground with his leg cut off and there was blood and flesh on the rail of track 13, the track upon which the train had stood. There was blood on each side of the rail and on the ground around it. His head was toward track 14, which was parallel with track 13. His feet were toward track 13 and only a few inches from the near rail. His lantern, that he used in the work of inspection, was on its side, and out. His wrench, which he had also been using in his work, was lying near. While he was lying on the ground he was asked what was the matter, to which he replied, ''I got my leg cut off.'' The evidence of Ongyak strongly supports the theory of fact of the plaintiff that the deceased had not completed his final inspection at the time of the accident. After a careful consideration of all the facts and circumstances surrounding the accident, we are satisfied

that the jury were fully warranted in finding that the
deceased was between the cars working upon the brakes
or air line at the time the train started the second time.
The deceased knew, as well as Ongyak, that the rules
of the defendant required the head brake inspector to
wait until he received a third and final signal from
him that the rear brakes released properly and that the
rear end was ready, before the head brake inspector,
under the rules, had the right to remove the blue lights
from the engine and give a clearance card to the en-
gineer and train crew, and the deceased had a right
to assume, while he was engaged in his work of inspec-
tion, that the train would not start until he gave
Ongyak the final signal. The act of Ongyak in remov-
ing the blue lights from the engine and giving a clear-
ance card to the engineer and train crew constituted
negligence. There was also evidence for the plaintiff
that tended to prove that no whistle was sounded or
warning of any kind given the deceased before the
train started the second time. The plaintiff strenu-
ously contends that certain evidence shows that after
the train started the first time it was forced to stop
because the brakes were set from the rear, which in-
dicated that something was wrong, and that the en-
gineer was negligent in starting the train the second
time without knowing why the brakes had been set,
by whom set, what was wrong, or whether or not it
had been remedied. We do not deem it necessary to
pass upon this point. In our judgment the instant con-
tention is without merit.

The defendant next contends that the verdict and
judgment are against the manifest weight of the evi-
dence. Judge M. L. McKinley presided in the first
trial of this cause and there was a verdict and judg-
ment for $17,250. Judge R. R. Fowler presided in the
second trial and there was a verdict and judgment for
$12,500. Judge George W. Bristow presided in the
last trial and there was a verdict and judgment for

$25,000. As we have heretofore stated, we reversed the judgments in the first and second trials upon the sole ground that the verdicts were against the manifest weight of the evidence. Section 77 of the Practice Act, Cahill's St. ch. 110, ¶ 77, provides, *inter alia,* that ''no more than two new trials upon the same grounds shall be granted to the same party in the same cause.'' In *Illinois Cent. R. Co. v. Patterson,* 93 Ill. 290, the court held that this provision applies only to trial courts and not to appellate courts. The plaintiff argues that as the trial court, in the third trial, was forbidden by the statute to grant a new trial on the ground that the verdict was manifestly against the weight of the evidence, we cannot consistently say that he erred in obeying the statute. We do not find that this point has ever been presented to the Supreme Court. However, in our consideration of the instant contention we have assumed that we have the right, in a proper case, to grant a new trial for the third time upon the sole ground that the verdict is manifestly against the weight of the evidence. The material question, however, is, are we warranted in doing so in the instant case? In support of its contention that we should grant a new trial, regardless of the three verdicts and judgments, the defendant cites *Illinois Cent. R. Co. v. Patterson, supra,* and *Stanberry v. Moore,* 56 Ill. 472. In the first of these cases it appears that a former judgment had been reversed because the verdict was not sustained by the evidence. The case was tried again, with a similar result. The plaintiff insisted that the evidence was conflicting and that the Supreme Court should not reverse a second time on the same ground. To this argument the court said (p. 294): ''*On one point, and the most important point in the case, there is no conflict.* It stands admitted that the train was running at a higher rate of speed than was allowed by the instructions to engineers; that the road at the place of the accident, and for some distance in

each direction, was in bad condition, and that fact
was known to the engineer, and that, in violation of in-
structions, he did not slacken the speed, but increased
it above card-time. About these several matters there
is and can be no dispute. And in such palpable viola-
tion of instructions and duty, the verdict is clearly
against the evidence and without the shadow of evi-
dence to support it. *It is not a case of conflict, but
it is a clear case of the want of evidence to support
the finding.*" (Italics ours.) In *Stanberry v. Moore,
supra,* the court said: "There have been three ver-
dicts in this case, and, *if we could find any evidence
to sustain the judgment appealed from, we should be
reluctant to disturb it.*" (Italics ours.) In that case
the defendant, an attorney, was charged with negli-
gence, or breach of duty, and the court said: "With-
out proof of these he could not be held liable. The
principal duties of an attorney or agent are care, skill
and integrity. There is no proof of deficiency in any
of these requisites; and if the pleadings were formal
and correct, no principle of law would render appel-
lant liable for his conduct in the premises." In *Wol-
brecht v. Baumgarten,* 26 Ill. 291 (cited in *Illinois Cent.
R. Co. v. Patterson, supra*), the court said (pp. 295-6):
"Although there might be a case where this court
would set aside a third verdict as being entirely with-
out evidence to support it, or for a gross misdirection
of the court as to the law, we do not think this is such a
case. We do not discover any error in law, and as to
the evidence, though not entirely satisfactory, it is
sufficient to sustain the verdict. . . . The case must
be a very strong one for a defendant where this court
would interfere to set aside a third verdict on grounds
such as are here set up, especially when the two preced-
ing verdicts were in favor of the plaintiff. The judg-
ment must be affirmed." In *Silsbe v. Lucas,* 53 Ill.
479 (also cited in *Illinois Cent. R. Co. v. Patterson,
supra*), after holding that the 34th section of the Prac-

tice Act, as it then stood, which declared that "no more than two new trials shall be granted to the same party in the same cause," did not operate to restrain the court from granting any number of trials upon errors of law, but only from granting to the same party more than two new trials upon the ground of the verdict being against the evidence, the court said (p. 482): "It would seem to be eminently proper, where three juries have found the facts the same way, that there should be an end of the controversy as to what the facts are. The law having constituted the jury the judges of the facts, and only invested the judge with power to set aside the verdict when it is to his mind against the evidence, and when the persons authorized to find the facts have three times determined them the same way, the supervisory power of the judge should then cease, and the facts thus found should be conclusive." In *Parmly v. Farrar,* 204 Ill. 38, it appeared that the suit had been tried four times and the defendant had been four times granted a new trial, but on one occasion, however, a new trial was granted by the Supreme Court for error of the trial court in refusing to give a certain instruction. In its opinion, the court quotes with approval the language used in *Silsbe v. Lucas, supra,* which we have heretofore quoted. The following also appears in the opinion: "We also concur with the Appellate Court when they say in their last opinion deciding this case: 'Unless material errors of law have intervened, or it is made to appear that passion, partiality or prejudice have guided the verdict, the facts three times determined the same way should be deemed conclusive. This does not, in the case at bar, apply to the amount of the verdict, for that has varied, as before stated. But that appellee is entitled to recover some amount, we are compelled to conclude as finally settled. *It is not to be presumed that passion, partiality or prejudice have influenced four different juries in as many trials.'* (*Parmly v.*

*Farrar,* 105 Ill. App. 394.)'' (Italics ours.) In *Hinchliff v. Rudnik,* 212 Ill. 569, 573, the court said: ''Inasmuch as three juries have found the facts the same way, it seems to be eminently proper that there should be an end of the controversy so far as the facts are concerned. (*Parmly v. Farrar,* 204 Ill. 38, and cases there cited.)'' Where the evidence is conflicting and two juries have heard it and found the facts the same way, and there is evidence tending to sustain the findings, the judgment will not be reversed on the facts. (*Bates v. Danville St. Ry. & Light Co.,* 190 Ill. App. 486.) A number of other Appellate Court cases to the same effect might be cited. In *Cunningham v. Magoun,* 18 Pick. 13, Chief Justice Shaw, who delivered the opinion of the court said: ''The great principle, which is at the basis of jury trial, is never to be lost sight of, that to all matters of law, the court are to answer, to all controverted facts, the jury. The verdict of a jury is practically to be taken for truth.'' After an examination of the evidence in the case the judge concluded thus: ''In the present case, though there was strong evidence to prove a partnership, yet there was evidence the other way, the burden of proof was upon the plaintiffs, and two juries on the evidence have decided against them. We do not feel warranted in saying that they have done wrong.'' The plaintiff very earnestly argues that the fact that three juries have found for the plaintiff and that the verdict in each trial has been approved by the trial judge, proves clearly wherein the truth of the case lies, and that if this court should again reverse and remand the cause upon the sole ground that the verdict is against the manifest weight of the evidence, such action, without a precedent in this State, would tend, in its effect, to abridge the right of trial by jury. To this argument the defendant responds that the fact that three trial judges and three juries have passed upon the facts adversely to it, should have no weight, ''because trial

judges are prone to submit personal injury cases to the jury with the thought that the defendant will appeal, and the error be rectified by the Appellate Court. This idea, which is all too prevalent among many of our trial judges of passing to the Appellate Court the responsibility of determining the question as to whether or not the plaintiff has made out a case, should be borne in mind by the Appellate Court when considering appellee's contention that three trial judges have considered the case. As to the weight which should be given the jury's verdict, this court is familiar with the well-known proclivity of juries to render verdicts against railroad companies irrespective of the merits of the case. This prejudice of juries against certain classes of defendants is so well known and universally recognized by the Bar generally that the court may almost take judicial notice of the fact.'' The three judges in question are able, experienced, honest and courageous in the performance of their duties, and the reckless and unwarranted implication that they were indifferent to their oaths of office meets with our strong condemnation. We also emphatically disapprove of that part of the argument that asks us to disregard the three verdicts on the ground that we should take judicial notice of the fact—as counsel contends—that jurors are so dishonest that they render verdicts against railroad companies ''irrespective of the merits of the case'' merely because such defendants are railroad companies. It is a far-fetched and extremely improper argument that calls upon us to presume that 36 jurors acted dishonestly in rendering their verdicts. In *Lamar v. Collins*, 252 Ill. App. 238, we said: ''In this enlightened country and under our system of universal education, jurors must be presumed to possess reason and judgment.'' We adhere to that statement. *A fortiori,* jurors must be presumed to have acted honestly in their consideration of a case. As was well stated in *Parmly v. Farrar,* 105 Ill. App. 394, an ap-

pellate court is not justified in presuming that passion, partiality or prejudice have influenced three different juries. It is the province of the jury to determine the credibility of witnesses and the weight to be given their testimony. They may test the truth and weigh the evidence by their knowledge and judgment derived from experience, observation and reflection. "There are many things which a jury observes on the trial in such case that do not appear from the printed record— the appearance of the respective witnesses, their manner of testifying and a great many other circumstances. They are in a much better position in such case to determine the truth of the matter in controversy than a court of review." (*Mills & Co. v. Duke,* 232 Ill. App. 277.) In *Mirich v. Forschner Contracting Co., supra,* the court said (p. 358) : "One of the recognized benefits of trial by jury is that the jury sees and hears the witnesses, which gives them superior advantage over a reviewing court in determining the credibility of the witnesses and the weight and credit that should be given their testimony." Many authorities to the same effect might be cited. The wise rule of law that the preponderance of evidence is not necessarily determined by the greater number of witnesses was born of experience. If the law were otherwise many cases would be determined by witnesses whom the jury and trial court disbelieved. However, the question of the preponderance of the evidence does not arise in this court. Under the law we cannot disturb the verdict of the jury unless it is clearly against the manifest weight of the evidence. Manifest means clearly evident, clear, plain, indisputable. After a careful consideration of all the evidence, and giving due weight, as we must, to the fact that three juries have found for the plaintiff and that the trial court in each trial approved the finding of the jury, we have reached the conclusion that we are not warranted in holding that the verdict is against the manifest weight

of the evidence. To repeat what was said in *Hinchliff v. Rudnik, supra,* "inasmuch as three juries have found the facts the same way, it seems to be eminently proper that there should be an end of the controversy so far as the facts are concerned."

The defendant contends that the court erred in refusing to give the following instruction to the jury:

"1. The court instructs you that the negligence of a defendant cannot be inferred from a presumption of care on the part of the person killed. A presumption in the performance of duty attends the defendant as well as the person killed. It must be overcome by direct evidence. One presumption cannot be built upon another."

The defendant concedes that the instruction is an excerpt from the opinion of the court in *Looney v. Metropolitan R. Co.,* 200 U. S. 480. Our Supreme Court, on a number of occasions, has commented upon the practice of converting sentences in the opinion of the court into instructions, and has held that it is a bad practice and one that often leads into serious error. The wisdom of this rule is well illustrated in the instant instruction. The defendant contends that the instruction should have been given because there were no eyewitnesses to the accident and no witness knew how it actually happened and therefore it was necessary for the jury to speculate as to how it did occur. But the plaintiff had the right to prove her case by direct or circumstantial evidence. The instruction states that a presumption in the performance of duty attends the defendant as well as the person killed, and that the presumption must be overcome by *direct* evidence. This is not the law, and in the instant case the giving of the instruction would have constituted prejudicial error, as a jury might well believe that as the plaintiff had not proven by direct evidence how the accident occurred it was their duty, under the law, to acquit the defendant. Moreover, the

principle of law that formed the subject matter of the refused instruction was fully covered in defendant's given instruction number 7, which reads as follows:

"7. The court instructs you that the fact of accident carries with it no presumption of negligence on the part of the defendant, but it is an affirmative fact for the plaintiff to establish that the defendant has been guilty of negligence as charged in the plaintiff's declaration. It is not sufficient for the plaintiff to show that the defendant may possibly have been guilty of negligence. The evidence must point to the fact that it was guilty of the negligence charged in the plaintiff's declaration, and if you believe from all of the testimony that the matter is uncertain and it shows that any one of a number of things may have brought about the injury, for some of which the defendant is responsible and for some of which it is not, it is not for you to guess between these various causes and find that the negligence of the employer was the real cause when there is no satisfactory foundation in the testimony for that conclusion."

The defendant next contends that the court erred in refusing to give its requested instruction number 4. It is sufficient to say in answer to this contention that the substance of the refused instruction is fully covered in defendant's given instructions 7, 13 and 21.

The defendant next contends that the court erred in refusing to give its requested instruction number 20. It is a sufficient answer to this contention to say that the substance of the instruction is fully covered in defendant's given instructions 7, 13, 18 and 21. In the matter of instructions we may say that the trial court gave only two instructions on behalf of the plaintiff, and 19 on behalf of the defendant, and some of the defendant's given instructions are quite lengthy. The defendant does not complain of the two instructions given for the plaintiff, and after a careful reading of the defendant's given instructions we are satisfied that

they cover, fully and correctly, all the principles of law that the defendant might rightfully ask in a case of this kind.

No complaint is made as to the amount of the verdict. After a careful study of the record we are satisfied that the cause was well tried by the trial judge and that the rights of the parties were carefully guarded by him.

The judgment of the superior court of Cook county is affirmed.

*Affirmed.*

GRIDLEY, P. J., and KERNER, J., concur.