## Richard Seeden, Plaintiff-Appellant, v. Erwin F. Kolarik, Defendant-Appellee.

### Gen. No. 10,633.

Opinion filed May 15, 1953.

Released for publication May 29, 1953.

EDWIN A. DVORAK, of Chicago, and EDGAR J. ELLIOTT, of Wheaton, for appellant.

WYATT JACOBS, of Chicago, for appellee; JOSEPH B. LEDERLEITNER, of Chicago, of counsel.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Richard Seeden, plaintiff appellant, filed his suit in the circuit court of Du Page county, Illinois, against

Erwin F. Kolarik, defendant appellee, for personal injuries arising out of an automobile accident. The complaint alleged that the defendant, while operating his automobile on a public highway, negligently ran into the plaintiff who was walking on the highway, causing him serious personal injuries, for which he asked damages. The defendant denied these charges and after a jury trial, was found not guilty. The usual motions were presented to the court by the plaintiff after verdict. These motions were denied by the court and judgment was entered on the verdict. This appeal follows.

The plaintiff assigned as error that the verdict was against the manifest weight of the evidence and that the court gave repetitious and other improper instructions for the defendant. The following facts were largely undisputed: that on December 31, 1949, about 5:30 p. m., the plaintiff was walking south on a public highway known as Madison street; that this street, at or near the place of the accident, is a black macadam highway about eighteen feet in width; that the accident occurred about one-fourth mile south of the village limits of Hinsdale, Illinois; that the highway at this point runs through a sparsely settled area; that there are shoulders constructed of grass, gravel, and dirt, wide enough for a car to park on each side of the highway; that at the time of the accident it was dark, was misting rain, and was somewhat foggy; that the highway was wet and black and there were puddles of water on the east edge of the highway and on the shoulder; that immediately prior to and at the time of the collision, the plaintiff was walking south in the northbound traffic lane; that at about the same time the defendant, alone in his car, was driving south in the southbound traffic lane on the same highway; that his headlights were on and his windshield wiper was in operation; that for a short time prior to the col-

lision, he had been following an automobile driven by Gene Rausch, likewise proceeding south in the southbound traffic lane; that Rausch was travelling somewhere between twenty and thirty miles per hour; that the headlights and taillights of his car were burning; that there were no cars approaching from the south; that the defendant's car, in attempting to pass the Rausch car, proceeded around him into the northbound traffic lane and struck the plaintiff, causing him serious injuries; that the left front headlight of the defendant's car was broken and the left side of the hood was dented; that as a result of the accident both legs of the plaintiff were fractured; that he was in the hospital for a long time and at the time of the trial was still partially incapacitated; that his medical and hospital expenses amounted to about $4,200.

The plaintiff, Richard Seeden, testified in addition to the above uncontroverted facts, that prior to and at the time of the collision, he was walking south about eighteen inches from the east edge of the pavement in the northbound traffic lane; that the east shoulder was muddy and had puddles of water on it; that before he was struck he had observed lights from a car coming behind him; that he did not change his course or look around at any time; that he heard the noise of a motor from his rear which sounded as if it was in the southbound lane; that it was a dark night and that lights from the cars did not show very far ahead; that he was well acquainted with the road; that he had no light of any kind on him and was not aware of the lights on the car behind him very long before he was struck; that he walked two or three feet after he observed the lights behind him before he was hit.

The defendant, Erwin F. Kolarik, testified in addition to the uncontroverted questions of fact, that shortly before the accident he was driving south at about twenty-two or twenty-three miles an hour; that he

followed the Rausch car for a short distance at about the same rate of speed, and observing that there was no northbound traffic, accelerated his speed and proceeded to go around the Rausch car into the northbound traffic lane; that as he got into this traffic lane, and while his car was about even with the left fender of the Rausch car, he first observed the plaintiff, dressed in a dark suit, dark overcoat, and a gray hat, walking south about three to five feet from the east edge of the pavement, pretty close to the middle of the northbound lane; that he applied his brakes; that the rear end of his car swung around and the left front part of his car collided with the plaintiff; that when he first saw the plaintiff, he was about one and one-half car lengths in front of him or about twenty-five feet away; that he could have seen a car coming from the south with its headlights on about half a mile away; later he testified that he could see about seventy-five feet with his lights; that his lights would probably not show as far as two blocks; that he did not sound his horn before he struck the plaintiff, as he did not have time; that he had no difficulty in seeing the taillights of the Rausch car.

Gene Rausch testified that the defendant was passing him at about the time of the accident; that at the time the defendant started to pass his headlights lit up a man walking in the northbound traffic lane, headed south; that this was the first time Rausch observed the plaintiff; that he thought the plaintiff was walking two or three feet from the edge of the highway; that his, Rausch's, headlights did not indicate the presence of the plaintiff on the highway; that when he first saw the plaintiff, he was about opposite the driver's seat; that he did not hear any horn or any squeal of brakes.

Freda Theidal was riding with Gene Rausch in the front seat of his car. She testified that she could see from the headlights of Rausch's car about 50 or 60

feet ahead; that she could see lights of other vehicles or street lights at a greater distance; that she did not see the plaintiff at any time prior to the accident; that she heard a sudden squealing of brakes; that she observed the lights of defendant's car as it came up behind them; that she observed defendant's car pass them, very closely and quickly; that the night was bad. Her written statement was admitted in evidence, but it does not appear to be materially different from her oral testimony.

Above are the material facts concerning the accident. The above were the only eyewitnesses.

 We shall first consider whether or not the verdict of the jury was manifestly against the weight of the evidence. The word manifest may mean clear, evident, plain, or obvious. (*Norkevich v. Atchison, T. & S. F. Ry. Co.*, 263 Ill. App. 1.) The jury may well have concluded from the testimony to which they gave credence that the defendant, in driving around the car in question, was exercising that degree of care required by the law in that he was acting as an ordinary prudent person would have acted under like or similar circumstances and hence was not guilty of negligence. The jury, likewise, may have concluded, after weighing the testimony pro and con, that the testimony of the defendant and of Gene Rausch were worthy of belief. The jury may have reasonably believed that the plaintiff was at or near the center of the northbound traffic lane on a dark and foggy night without a light, knowing the danger of his position, and by reason of this, through his contributory negligence, brought on his own injury. Either absence of proof of defendant's negligence or plaintiff's lack of due care would, of course, prevent recovery. The verdict of the jury was based on reasonable and substantial evidence which fairly supported the verdict. The questions of negligence and contributory negligence are

pre-eminently questions of fact for the jury to determine, and as the jury's verdict is supported by substantial evidence, even though there be substantial evidence to the contrary, the reviewing court is bound by the verdict of the jury. To hold otherwise the court would be invading the prerogative of the jury. (*McMillian v. McLane,* 338 Ill. App. 514; *Bouslough v. Schumacher,* 270 Ill. App. 79.) The jury is in a better position to determine the credibility of the witnesses and the weight to be given their testimony than the reviewing court. They have an opportunity to observe the demeanor of the witnesses while testifying and their manner of testifying, and from this and the testimony, they determine where the truth lies. Many of these circumstances we do not have before us from the printed record. (*Norkevich v. Atchison, T. & S. F. Ry. Co., supra; Miller v. Green,* 345 Ill. App. 255.)

*Alden v. Coultrip,* 275 Ill. App. 306, decided by this court and relied on by the plaintiff, involved an appeal from a verdict of a jury in favor of a pedestrian plaintiff who was injured on a state highway when a car approaching from the rear attempted to go around another car. The factual situation in this case is similar to that in the instant case. Most of the opinion discusses the question of whether or not the plaintiff was guilty of contributory negligence as a matter of law. The court held that the fact that the plaintiff was walking on the road at night without a light when she was on the proper side of the road, and the fact that she did not look around to see what the approaching car was doing did not make her guilty of contributory negligence as a matter of law. The court further held that the verdict of the jury was not manifestly against the weight of the evidence and that the question of contributory negligence was one of fact for the jury who heard and observed the witnesses to decide, since they were in a better position to determine the credi-

bility of the witnesses than the reviewing court. The judgment in favor of the plaintiff was affirmed.

*Bouslough v. Schumacher,* 270 Ill. App. 79, also decided by this court, is a case where the plaintiff's intestate was walking on a highway at night and the defendant's car, approaching from the rear, while passing another automobile, ran into the plaintiff's intestate, causing her death. Plaintiff's intestate was walking in the center of the left half of the paved portion of the highway and the defendant, who was not travelling fast, did everything in his power to avert hitting her. The facts in this case are also similar to those in the instant case. The jury found the defendant not guilty and the court entered judgment on the verdict in bar of action. The Appellate Court held that, while evidence was conflicting, the verdict of the jury was supported by substantial evidence and they affirmed the judgment of the trial court.

The above cases illustrate the rule that reviewing courts, in regard to controverted questions of fact of negligence or contributory negligence, are bound by the jury's verdict, if it is based on substantial evidence, whether that verdict is in favor of the plaintiff or against him.

We believe in the instant case that reasonable and substantial evidence fairly supports the verdict, that it is not palpably against the manifest weight of the evidence.

The defendant next argues as error that the instructions given by the court were repetitious and that some of them did not properly state the law. An examination of the record discloses that the instructions improperly appear in the common-law record. The nineteen instructions shown in the common-law record are all marked by the court as "given." The same instructions appear in the same order in the report of trial proceedings, but are not marked either

"given" or "refused." There is nothing appearing in the common-law record or in the report of trial proceedings showing on whose behalf the instructions were given. The defendant contends that we have no right to pass on the alleged errors as to the instructions in the condition in which the record appears. Plaintiff argues that section 74 of the Civil Practice Act [Ill. Rev. Stats. 1951, ch. 110, § 198; Jones Ill. Stats. Ann. 104.074] answers this question and he cites *Horvat v. Opas*, 315 Ill. App. 229. This case holds that the Civil Practice Act abolishes the distinction between the common-law record and the report of trial proceedings, and that if the instructions appear in the common-law record, they may be considered by the Appellate Court. The court says, however, in the last line of the opinion on page 234:

"It is obvious that the contention of counsel for plaintiff, that the record should show at whose request the instructions were given and that those were all the instructions given or requested, should appear, is sound but since there must be a retrial, this can be obviated."

Regardless of this case the Supreme Court has passed on the question. (*City of Chicago v. Callender*, 396 Ill. 371.) In this case error was assigned by the appellant that certain instructions were erroneously given and refused by the trial court. The court says on page 381:

". . . the alleged errors with reference to the instructions cannot be considered. The instructions are not included in the report of proceedings where they should be. They are incorporated only in the common law record. While the abstract is interspersed with appropriate statements showing that certain instructions were given and certain instructions refused, the record does not justify these statements. The instructions are not certified by the trial judge and made a

246

part of the report of proceedings, and are not properly preserved in the record."

In the above case some of the instructions contained in the common-law record were marked "refused" and some were marked "given." The court further says on page 382:

". . . there is nothing whatever in the record to show by whom any or either of these instructions were tendered. In this state of the record objections to the instructions obviously cannot be considered."

In *Dorgan v. Graeber,* 335 Ill. App. 503, the record and supplemental record do not show by whom the instructions were tendered. The sole error relied upon for reversal was the question of certain instructions. The court discusses the *Callender* case, above mentioned, and says on page 504:

". . . In *Gidlof v. Grosser,* 335 Ill. App. 124 (abst.) we said:

" 'No authority or citation is offered by Gidlof as a basis for our considering his objections to the instructions. We consider it a dangerous practice to infer from a reading of an instruction, without more, that one party or the other offered it. *Neufield v. Rodiminski,* 41 Ill. App. 144. We shall not consider the points raised on the instructions. *Price v. Bailey,* 265 Ill. App. 358.' See also *Horvat v. Opas,* 315 Ill. App. 229.

"In the state of the record objections to the instructions cannot be considered. The judgment of the circuit court of Cook county is affirmed."

In *Hall v. Koehler,* 349 Ill. App. 398 (abst.), recently decided by this court, the instructions alleged erroneous were contained only in the common-law record. The common-law record did not disclose who offered them and they were not marked "given" or "refused." We refused to consider the alleged error in the instruc-

247

tions, following the *Callender* and *Dorgan* cases above mentioned.

██ For the above reasons the assignment of error as to the instructions will not be considered here.

For the reasons above stated we find that the judgment of the trial court was correct and its judgment is affirmed.

*Judgment affirmed.*