Henry A. Gardner, Appellee, v. Railway Express Agency, Inc., Appellant.

Gen. No. 36,816.

Heard in the second division of this court for the first district at the June term, 1933. Opinion filed May 1, 1934.

CUTTING, MOORE & SIDLEY, for appellant; A. M. HARTUNG, J. D. DICKERSON and R. F. HIMMELHOCH, of counsel.

URBAN A. LAVERY and ERWIN W. ROEMER, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Plaintiff sued defendant in assumpsit. A jury returned a verdict finding the issues for plaintiff and assessing damages at $1,300. Defendant has appealed from a judgment entered upon the verdict in the sum of $1,160.

The declaration alleges, in substance, that defendant was a common carrier for hire and that on May 9, 1930, plaintiff delivered to it at Greenwood, Virginia, his horse, of the value of $2,500, to be taken care of and safely carried by defendant from Greenwood, Virginia, to Chicago, Illinois, and to be safely delivered by defendant to plaintiff at said last mentioned place;

that in consideration of a certain reward to be paid to defendant by plaintiff defendant on said date promised plaintiff to take care of the horse and safely carry it from Greenwood, Virginia, to Chicago, Illinois, and to safely deliver it to plaintiff at said last mentioned place; that although defendant received the horse in good order it did not regard its promise to take care of the horse and safely carry it from Greenwood, Virginia, to Chicago, Illinois, and to safely deliver it to plaintiff at said last mentioned place, and defendant so carelessly behaved itself in respect to the horse that by and through the negligence and improper conduct of defendant's servants the horse was bruised and injured and lessened in value to the amount of $1,800, to the damage of plaintiff in the sum of $1,800. An amended declaration filed was in substance the same as the original save that it alleges that Winnetka, Illinois, was the point of destination and that the value of the horse was $1,800. Plaintiff, upon order, filed a bill of particulars, which recites, *inter alia,* that the claim for damages was based upon the breach by defendant of a certain written contract made between plaintiff as consignee and defendant as a common carrier, a copy of which was attached to and made a part of the bill of particulars. The only parts of the contract necessary to mention are the following:

"Section 5. The shipper agrees that the express company shall not be liable for the conduct or acts of the animals to themselves or to each other, such as biting, kicking, goring, or smothering, nor for loss or damage arising from the condition of the animals themselves or which results from their nature or propensities, which risks are assumed by the shipper. . . .

"Section 8. The shipper agrees that as a condition precedent to recovery hereunder, for loss or injury or damage to, or delay in delivery of this shipment, such

loss, injury, damage or delay shall be proved by the shipper to have been caused by negligence of the carrier. . . . "

Defendant filed the plea of general issue, special pleas relying on sections 5 and 8 of the contract, and also a plea of set-off for unpaid carriage charges, amounting to the sum of $140.

The undisputed evidence shows that the horse was delivered to defendant at Greenwood, Virginia, in sound condition and that when it arrived in Winnetka it was seriously injured. While plaintiff insisted at the trial, and here insists, that proof of delivery of the horse to defendant in good condition and its delivery to plaintiff in a damaged condition made out a *prima facie* showing of negligence on the part of defendant in the handling of the horse, nevertheless, plaintiff saw fit to offer proof tending to prove negligence on the part of defendant. No one representing plaintiff accompanied the horse on any part of its journey. Plaintiff's proof tended to show that at the time the horse was delivered at Winnetka there was no straw on the floor of the car; that there were no stalls or partitions in the car; that the horse "was tied at one end of the car by a rope passing from one side of the car through the halter then through the horse's mouth then through the halter on the other side of the horse's head and then fastened to the other side of the car"; that the car, at the time of delivery, was next to a loading platform which was 14 to 18 inches lower than the floor of the car; that a certain chute or runway with a wooden railing on each side was placed against the car door and on the unloading platform and that the top of the chute was a couple of inches above the floor of the car so that it was necessary for the horse to step up to the chute and then down on it in order to reach the loading platform; that the lintel of the car door was so low that when the horse stepped up

on the top of the chute his withers grazed the lintel and caused him to back up; that there was nothing in the car but the horse; that there was no partition about him nor anything in the nature of a temporary crate about him. In his opening statement counsel for defendant said that defendant would prove that the horse was forwarded in what is known as a portable stall; that is, a stall made up of five sections, floor board, sides, back and gate; that the horse was loaded by the shipper in the presence of one of the express messengers; that an express messenger always rode with the horse during the journey; that the horse was fed and watered, and that defendant's evidence would show that the injuries and damage to the horse occurred in spite of all the care that experienced employees could give it; that the injury and damage were caused solely by the fact that the horse was high-strung and of a nervous temperament. Defendant, however, failed to introduce any evidence in support of the opening statement. In fact, the only evidence introduced by it was a certified copy of the tariffs filed by it with the Interstate Commerce Commission.

As the case involves an interstate shipment the federal law governs it.

Defendant contends that the evidence offered by plaintiff did not tend to show that the injuries in question were the result of any negligence of defendant or its servants. While plaintiff contends that the evidence offered by him was sufficient to make out a *prima facie* showing of negligence, in the view that we have taken of this appeal, it is unnecessary for us to pass upon plaintiff's contention. We may say, however, that it appears to be the position of defendant that not only was the burden upon plaintiff to prove negligence but that he must prove such negligence by direct evidence. It admits that plaintiff proved cer-

tain facts from which a court or a jury might infer negligence but insists that such proof is not sufficient. The general rule is that a party has the right to prove an alleged fact by direct or circumstantial evidence.

Defendant contends that "the primary question before the court is whether a plaintiff in a suit against a common carrier for negligent damage to a horse entrusted to that common carrier for transportation, can recover for such injury without any proof of any negligence whatsoever, when the contract of shipment upon which the plaintiff seeks to recover specifically requires that proof of negligence shall be a condition precedent to such a recovery. The court below sustained such a recovery, and thus sanctioned a violation of a specific term of the contract. . . . The court at the conclusion of all the evidence overruled defendant's motion for a directed verdict. The question therefore is squarely presented whether upon such a record, with such a contract authorized and approved by the Interstate Commerce Commission, the plaintiff can recover without complying with the terms of that contract requiring 'proof of negligence by the shipper.' '' Defendant makes the following statement in reference to the foregoing contention: "We are quite willing to admit that any contract exempting a carrier from liability for its own negligence is not a fair and reasonable contract, as determined by the federal courts, and is therefore unenforcible; and, of course, such a contract can gain no validity from being filed with the Interstate Commerce Commission. This was the sole question involved in *Boston & Maine Rd. v. Piper*, 246 U. S. 439. The court there construed the provision contained in the contract limiting the liability of the carrier as one exempting that carrier from liability for negligence and so held it void." In support of this contention defendant relies upon section 8 of the contract and assumes that plaintiff offered no

evidence sufficient to make out a *prima facie* case of negligence.

As the crux of this case is section 8 of the bill of lading it is well to repeat it:

"Section 8. The shipper agrees that as a condition precedent to recovery hereunder, for loss or injury or damage to, or delay in delivery of this shipment, such loss, injury, damage or delay shall be proved by the shipper to have been caused by negligence of the carrier. . . . "

Defendant contends that under this provision the burden is upon plaintiff to prove specific negligence and that plaintiff cannot rely upon any presumption of negligence arising from the delivery of the horse in a damaged condition. In considering this contention it must be borne in mind that plaintiff, in the shipment of the horse, paid the full, regular tariff charge for the carriage, based upon the stated value of $1,800. Plaintiff contends: "(A) Any contract for the interstate transportation of property which attempts, either directly or indirectly, to exempt a carrier from its own negligence is void." "(B) Such a provision gains no validity because it is included in tariffs filed by the carrier with the Interstate Commerce Commission." "(C) Section 8 of Carrier's Bill of Lading is void because it conflicts with the provisions of the First and Second Cummins Amendment to the Interstate Commerce Act." Plaintiff further contends that "under the Bill of Lading sued upon and at common law proof of delivery of the shipment to the carrier in good condition and its delivery to the consignee in a damaged condition makes a prima facie showing of negligence on the part of the carrier in the handling of the shipment."

Under the federal law a carrier cannot exempt itself from liability for its negligence by provisions in a bill of lading. (See *Brennan Packing Co. v. Mellon,* 252

Ill. App. 522, 532, 533, and cases cited therein. See also *Cau v. Texas & Pac. Ry. Co.,* 194 U. S. 427; *New England Fruit & Produce Co. v. Hines,* 97 Conn. 225, 234, and also the federal cases cited therein.) Defendant concedes the foregoing to be the law and that ''a carrier cannot contravene a positive requirement of the federal statute simply by filing that contract with the Interstate Commerce Commission as a part of its schedules.'' It contends, however, that section 8 does not exempt it from its own negligence but that under the contract ''proof of negligence of the carrier must be made as a condition precedent to that carrier's liability for loss, damage or delay, and proof of delivery to the carrier in good condition and its delivery to the consignee in a damaged condition is not sufficient.''

Long before the passage of the Interstate Commerce Act and the amendments thereto our Supreme Court (in *Adams Express Co. v. Stettaners,* 61 Ill. 184), after holding that a carrier cannot by contract exempt itself from the exercise of reasonable care and that where goods fail to arrive at their destination and the carrier does not show the manner of their loss the presumption arises against it of want of ordinary care, said:

*''This rule is reasonable and just. The carrier alone has it in his power to show what has become of the goods, or why they were not duly delivered. He has the means of tracing them from the moment of their shipment. The shipper has not. He can only show that he delivered them safely to the carrier, and unless the rule in question is applied, the shipper would practically have no remedy, even though his goods had been plundered by the very servants of the carrier. It would very rarely be in his power to make the necessary proof.''* (Italics ours.)

This statement as to the reason for the rule has been generally indorsed and the common sense and justice

of the same has never been successfully challenged. The position of defendant in the instant case is not a novel one. Carriers have frequently attempted, by stipulations in the contract of shipment, to relieve themselves from liability for losses occasioned by their negligence, but such stipulations have been considered as attempts to evade the law and of no effect in exonerating them from their negligence.

Defendant concedes that the validity of section 8 has not been passed upon by the federal courts, but it insists that it has been approved by several state courts and it cites in support of this statement the following cases: *Gruenwald v. American Ry. Express Co.*, 217 N. Y. S. 767; *Grant v. American Ry. Express Co.*, 126 Me. 489; *Fry v. American Ry. Express Co.*, 142 Atl. 568, and *Bell v. American Ry. Express Co.*, 84 N. H. 273. The first case cited is a *nisi prius* decision (Municipal Court of the City of New York) in which the validity of the provision was not questioned. From a reading of the opinion it is apparent that the court assumed the validity of the provision and enforced it. In the second case, if the provision played any real part in the determination of a somewhat odd case, under the facts, it is quite clear that the validity of the provision was assumed. In the third case the validity of the provision does not appear to have been questioned and the decision was that because the contract which contained the provision in question had been approved by the Interstate Commerce Commission it was binding upon the parties. As we have heretofore stated, a provision gains no validity because it is included in tariffs filed by a carrier with the Interstate Commerce Commission.

"Contracts of shipment in contravention of the settled principles of the common law preventing the carrier from contracting against liability for loss or damage resulting from his own negligence, are invalid. The fact that such contracts have been filed with the Inter-

state Commerce Commission does not modify this rule.'' (Roberts Federal Liabilities of Carriers (2d ed.) 1929, Vol. 1, Sec. 373, p. 725.)

''In the bill of lading, now under consideration, there is an express agreement limiting liability from unusual delay and detention, caused by the carrier's negligence, to the amount actually expended by the shipper in the purchase of food and water for his stock while so detained. This stipulation contravenes the principle that the carrier may not exonerate itself from losses negligently caused by it, and is not within the principle of limiting liability to an agreed valuation which has been made the basis of a reduced freight rate. Such stipulations as are here involved are not legal limitations upon the amount of recovery, but are in effect attempts to limit the carrier's liability for negligence by a contract which leaves practically no recovery for damages resulting from such negligence. *While this provision was in the bill of lading, the form of which was filed with the Railroad Company's tariffs with the Interstate Commerce Commission, it gains nothing from that fact. The legal conditions and limitations in the carrier's bill of lading duly filed with the Commission are binding until changed by that body* (*Kansas City Southern Ry. Co. v. Carl,* 227 U. S. 639, 654); *but not so of conditions and limitations which are, as is this one, illegal, and consequently void.''* (*Boston & Maine R. R. v. Piper,* 246 U. S. 439, 445. Italics ours.)

See also *Chicago, M. & St. P. Ry. Co. v. McCaull-Dinsmore Co.,* 253 U. S. 97, 99. Other cases to the same effect might be cited but defendant concedes, in a statement heretofore quoted in this opinion, that a contract exempting a carrier from liability for its own negligence gains no validity by being filed with the Interstate Commerce Commission. In the last case (*Bell v. American Ry. Express Co.*), cited by defendant, the validity of the provision was not questioned

and the decision turned upon an interpretation of its meaning.

Plaintiff contends that *Sullivan v. American Ry. Express Co.*, 211 Mo. App. 123, 132, and *Coustaline v. Louisiana Ry. & Nav. Co.*, 154 La. 667, are authorities in support of his contention that a provision such as section 8 is not one which defendant can enforce. We agree with plaintiff as to the effect of these two deci- sions, which are based upon the general rule that a carrier cannot enforce a stipulation in a contract which, in effect, is an attempt by it to relieve itself from liability for losses occasioned by its negligence. (See Hutchinson Carriers (3d ed.) p. 490, sec. 456.) Other authorities to the same effect might be cited if it were necessary.

Plaintiff contends and strenuously argues that "Sec- tion 8 of Carrier's Bill of Lading is void because it conflicts with the provisions of the First and Second Cummins Amendment to the Interstate Commerce Act." In support of this contention he cites Roberts Federal Liabilities of Carriers (2d ed.) Vol. 1, p. 704 *et seq.;* Barnes Limitations of Common Carriers' Lia- bility, pp. 108 & 109; *In the Matter of Bills of Lading,* 52 I. C. C. 671; *Perishable Fruit Investigation,* 56 I. C. C. 449, and *North Packing & Provision Co. v. C. M. & St. P. Ry. Co.,* 80 I. C. C. 737. In reference to this con- tention it is sufficient to say that the effect of the Cum- mins Amendment was to nullify provisions limiting liability contained in public tariffs and in bills of lad- ing (see Roberts Federal Liabilities of Carriers, *su- pra*) and that the Second Cummins Amendment did not change the First Cummins Amendment in that regard. (Barnes Limitations of Common Carriers' Liability, *supra.*)

In *Hartford Live Stock Ins. Co. v. Ry. Express Agency, Inc.,* 274 Ill. App. 585, wherein we are this day filing an opinion, we said:

"To hold that the shipper must allege and prove the specific acts of negligence that caused injury or death to live stock in transit while unaccompanied by a caretaker and while under the sole control and direction of the carrier, it would be to say 'that the shipper must establish facts that lie exclusively within the possession and control of defendant,' and would leave the shipper without remedy or even hope of having his rights protected other than as the same might be protected by the testimony of those whose interest lay not with the shipper but opposed to him. The result would be that it would be practically impossible in any case to show such negligence on the part of the carrier as would warrant recovery."

That language applies with equal force to the question now before us. In our opinion section 8 is, in practical effect, an effort by the carrier to exempt itself from liability for its negligence and that to enforce this section would be to place upon a shipper a burden that in nearly every case he could not successfully carry. The Interstate Commerce Act, and the amendments thereto, never contemplated any such injustice to the shipper. We hold that section 8 is not binding upon plaintiff.

Defendant contends that the court committed several errors that bear upon the question of damages, but it is entirely unnecessary for us to consider these alleged errors as defendant has not by any assignment of error raised the point that the amount of the verdict is excessive.

Defendant contends that the court erred in giving to the jury, at the instance of plaintiff, the following instruction:

"If you find from all the evidence and under the instructions of the court that at the time plaintiff delivered the horse in question to the defendant at Greenwood, Virginia, the said horse was in a sound

condition and uninjured; and if you further find that at the time of the delivery of said horse to the plaintiff by the defendant, at Winnetka, Illinois, on May 11, 1930, the said horse was bruised, cut and injured; and if you further find that the said bruising, cuts and injuries were not caused by the inherent vice or vicious qualities of the horse itself, then the plaintiff has made out a prima facie case against the defendant entitling him, in the absence of proof to the contrary, to recover from the defendant.''

The principal criticism of this instruction is that the contract required plaintiff to prove negligence as a condition precedent to recovery and that the instruction ignores this requirement. If we are correct in our ruling as to section 8 there is no merit in defendant's contention.

The judgment of the circuit court of Cook county is affirmed.

*Affirmed.*

SULLIVAN, P. J., and GRIDLEY, J., concur.