476

Ione B. Roadruck, Administratrix of Estate of David Roadruck, Deceased and Fleet Maintenance, Inc., Appellees, v. Maurice J. Schultz, Administrator of Estate of Fred F. Schultz, Deceased, Appellant.

Gen. No. 43,978.

Opinion filed February 17, 1948.   Released for publication March 9, 1948.

VOGEL & BUNGE, of Chicago, for appellant; L. H. VOGEL, ROBERT C. VOGEL and FORREST S. BLUNK, all of Chicago, of counsel.

C. HELMER JOHNSON, of Chicago, for certain appellee.

LEDERER, LIVINGSTON, KAHN & ADSIT, of Chicago, for certain other appellee; HARRY H. KAHN, LEO H. ARNSTEIN and RICHARD C. BLELOCH, all of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

On November 28, 1944, about 2 A.M., at the intersection of Michigan City road and Torrence avenue, in the city of Calumet, Cook county, Illinois, there was a collision between a tractor and trailer belonging to Fleet Maintenance, Inc., driven by David Roadruck, and a Mercury pleasure car driven by Fred F. Schultz. Both Roadruck and Schultz were killed in the collision and there were no eye witnesses to the accident. Ione B. Roadruck, Administratrix of the Estate of David Roadruck, deceased, sued Maurice J. Schultz, Administrator of the Estate of Fred F. Schultz, deceased, to recover damages for the wrongful death of David Roadruck. Fleet Maintenance, Inc., sued the same defendant to recover damages for the value of its truck, and the two suits were consolidated for trial. Maurice J. Schultz, Administrator of the Estate of Fred F.

Schultz, deceased, brought an action against Ione B. Roadruck, Administratrix of the Estate of David Roadruck, deceased, and Fleet Maintenance, Inc., to recover damages for the wrongful death of Fred F. Schultz, and an order was entered consolidating the three cases for trial. They were tried before the court and a jury, and at the conclusion of the evidence and arguments the trial court submitted eight forms of verdict to the jury and entered an order that "when said jury shall have agreed upon their verdict, they shall reduce it to writing, sign and seal the same, and be permitted to separate." It developed, however, that the jurors had signed only one of the eight forms of verdict that had been submitted to them. This signed verdict read as follows: "We, the jury, find the defendant, Maurice J. Schultz, Administrator of the Estate of Fred F. Schultz, deceased, guilty, and assess the plaintiff, Ione B. Roadruck, Administratrix of the Estate of David Roadruck, deceased, damages at the sum of $5000.00—Dollars." (Names of the jurors follow.) All of the other forms of verdict that had been submitted to the jury were returned unsigned and in the same condition that they were in when the trial court handed the forms to the jury. Judgment was entered upon the verdict that had been signed by the jury. Two weeks after the entering of that judgment, Fleet Maintenance, Inc., filed the following written motion: "Now comes Fleet Maintenance, Inc., plaintiff in the foregoing matter, by Lederer, Livingston, Kahn & Adsit, its attorneys, and moves the Court to enter a judgment in favor of the plaintiff, Fleet Maintenance, Inc., and against the defendant, Maurice J. Schultz, Administrator of the Estate of Fred F. Schultz, Deceased, in the sum of One Thousand Three Hundred Fifty Dollars ($1,350.00), based upon the verdict of the jury in favor of the plaintiff, Ione B. Roadruck, Administratrix of the Estate of David Roadruck, Deceased, and against the defendant, Maurice J. Schultz,

Administrator of the Estate of Fred F. Schultz, Deceased.'' Later the trial court entered the following judgment:

''This cause coming on to be heard on the motion of Fleet Maintenance, Inc. for judgments in its favor and against Maurice J. Schultz, Administrator of the Estate of Fred Schultz, Deceased, said motions having been heretofore filed and continued to this date, and the Court having heard arguments of counsel and being fully advised in the premises,

''The Court finds that the failure of the jury to return a verdict against Fleet Maintenance, Inc. in the suit where Fleet Maintenance, Inc. was a defendant is tantamount to and is a verdict of not guilty, and, therefore, judgment be and it hereby is entered on said verdict in favor of Fleet Maintenance, Inc., defendant, and against Maurice J. Schultz, as Administrator of the Estate of Fred Schultz, Deceased, plaintiff, and that said plaintiff take nothing by his suit and go hence without day, and that costs be assessed against him.

''And the Court further finds that in the suit in which Fleet Maintenance, Inc., is plaintiff, and Maurice J. Schultz, as Administrator of the Estate of Fred Schultz, is defendant, the verdict of the jury should be corrected to find for the plaintiff, Fleet Maintenance, Inc. and against the defendant, Maurice J. Schultz, as Administrator of the Estate of Fred Schultz, and that the plaintiff's damages be assessed at $1,350.00 and such verdict is so corrected and amended.

''And it is further ordered that judgment be and it hereby is entered on said verdict in favor of Fleet Maintenance, Inc. and against Maurice J. Schultz, Administrator of the Estate of Fred Schultz, Deceased, in the sum of $1,350.00 and costs.''

Maurice J. Schultz, Administrator of the Estate of Fred F. Schultz, deceased, appealed from each of the judgment orders and the two appeals were consolidated for hearing in this court.

Defendant contends that the trial court erred in denying his motion for a directed verdict made at the close of plaintiff's evidence and at the close of all the evidence in the case, and also erred in denying defendant's motion for judgment notwithstanding the verdict. In passing upon this contention we have assumed that it was intended to apply to the two cases.

" 'A motion to instruct the jury to find for the defendant is in the nature of a demurrer to the evidence, and the rule is that the evidence so demurred to, in its aspect most favorable to the plaintiff, together with all reasonable inferences arising therefrom, must be taken most strongly in favor of the plaintiff. The evidence is not weighed, and all contradictory evidence or explanatory circumstances must be rejected. The question presented on such motion is whether there is any evidence fairly tending to prove the plaintiff's declaration. In reviewing the action of the court of which complaint is made we do not weigh the evidence,—we can look only at that which is favorable to appellant. *Yess v. Yess,* 255 Ill. 414; *McCune v. Reynolds,* 288 id. 188; *Lloyd v. Rush,* 273 id. 489.' (*Hunter v. Troup,* 315 Ill. 293, 296, 297.)'' (*Rose v. City of Chicago,* 317 Ill. App. 1, 12. See, also, *Mahan v. Richardson,* 284 Ill. App. 493, 495; *Thomason v. Chicago Motor Coach Co.,* 292 Ill. App. 104, 110; *Wolever v. Curtiss Candy Co.,* 293 Ill. App. 586, 597; *Olympia Fields Club v. Bankers Indem. Ins. Co.,* 325 Ill. App. 649, 656, 657; *Panella v. Weil-McLain Co.,* 329 Ill. App. 240 (Abst. Op. App. Den. by Supr. Ct., 393 Ill. 630.)

"Plaintiff had the right to prove her case by direct or circumstantial evidence. In criminal as well as in civil cases a verdict may be founded on circumstances alone. See *Norkevich v. Atchison, T. & S. F. Ry. Co.,* 263 Ill. App. 1, 5, 6 (App. Den. by Supr. Ct., id. xiv), and cases cited therein. See, also, *Gardner v. Railway Express Agency,* 274 Ill. App. 626, 631." (*Panella v. Weil-McLain Co., supra.*)

█ The foregoing rules also apply to the contention that the court erred in denying defendant's motion for judgment notwithstanding the verdict. The principal argument urged by defendant in support of the contention is that "where equally reasonable inferences may be drawn from the known facts, one leading to the conclusion of liability and the other to nonliability, the plaintiff has failed to make a case for a jury," and defendant insists that "inconsistent conclusions were equally capable of being inferred from the undisputed evidence" in this case; that "neither of these inferences finds any greater support in the record than the other," and, therefore, plaintiff failed to make out a *prima facie* case. There is no merit in this argument. In *Lindroth v. Walgreen Co.*, 329 Ill. App. 105, 112, 113, we quoted the following from an opinion by MR. JUSTICE McSURELY in *Turner v. Cummings* (319 Ill. App. 225, at pp. 228, 229):

█ " 'In the petition for rehearing filed by the receivers of the streetcar company, it is also said "It is fundamental that an inference cannot be drawn from a fact or state of facts when an inconsistent inference may as readily be drawn from the same facts or state of facts." There are some decisions of this court and probably others where this has been stated, but it is not the law. As we said in *Plodzien v. Segool,* 314 Ill. App. 40, the law is that where "uncertainty arises as to the inferences that may legitimately be drawn from the evidence so that fair-minded men may honestly draw different conclusions, the question is not one of law but one of fact to be settled by the jury. *Denny v. Goldblatt,* 298 Ill. App. 325; *Chicago & N. W. Ry. Co. v. Hansen,* 166 Ill. 623; *Moore v. Rosenmond,* 238 N. Y. 356; *Kavale v. Morton Salt Co.,* 242 Ill. App. 205; *Norris v. Illinois Central R. Co.,* 88 Ill. App. 614; *Richmond & Danville R. Co. v. Powers,* 149 U. S. 43; *Gunning v. Cooley,* 281 U. S. 90; *Best v. District of Columbia,* 291 U. S. 411." See also *Reilly v. Peterson*

*Furniture Co.,* 314 Ill. App. 46. Note the language of JUDGE POUND in the *Moore* case and of CHIEF JUSTICE HUGHES in the *Best* case.' '' See, also, *Lawrence v. Industrial Com.,* 391 Ill. 80, where the Supreme court in passing upon the province of the Industrial Commission stated (pp. 84, 85):

''The rule is well settled that it is the province of the Industrial Commission to draw reasonable inferences and conclusions from evidentiary facts, and the courts are not privileged to set aside the findings of the commission unless they are manifestly against the weight of the evidence . . . and it is the exclusive duty and province of the commission to weigh the evidence and draw any and all reasonable inferences therefrom, and its conclusion in such case is final and not subject to review . . . . If the undisputed facts permit an inference either way, that is, if one reasonable mind may draw one inference and another reasonable mind a different inference from such facts, then the commission alone is empowered to draw the inference and its decision as to the weight of the evidence will not be disturbed on review.'' It will be noted that the Industrial Commission, like a jury, is the trier of facts. (See, also, *Reilly v. Peterson Furniture Co.,* 314 Ill. App. 46, 47.)

*Defendant's argument, when tested by the law that we have just cited, concedes, in effect, that plaintiff made out a prima facie case.* It must be understood, however, that we do not agree with defendant's contention that two equally reasonable inferences may be drawn from the known facts, one leading to the conclusion of liability and the other to nonliability. In passing upon the two contentions raised by defendant, the sole question for us to determine is, Is there any evidence in the record, together with all reasonable inferences arising therefrom, sufficient to make out a *prima facie* case for plaintiff?

Observing the rules that must guide us, we find evidence to support the following facts: The accident happened at the intersection of Michigan City road and Torrence avenue. The tractor and trailer, driven by David Roadruck, was being driven southward in Torrence avenue, which is a State road, an improved hard-surfaced through road, designated as ''Route 330 Ill.'' It is a heavily traveled thoroughfare by day and night. Michigan City road is an ''asphalt or blacktop'' street and is not a State road. It crosses Torrence avenue at an acute angle in a northwesterly and southeasterly direction. As one driving westward on Michigan City road approaches Torrence avenue there are stop signs and caution signs along that road. About 450 feet east of Torrence avenue there is a sign ''18 x 24'' with letters about five inches in height, which read, ''Stop sign ahead, Junction Alternate 30.'' There are white reflectors on that sign and ''when your headlights strike the sign, the reflector lights up.'' There is another sign on that road located approximately 50 feet east from Torrence avenue. This is a regular State stop sign for Michigan City road traffic. It has red reflectors on it. The wording on it in six inch letters says, ''Stop—State Route.'' A person looking northward from this stop sign along Torrence avenue would have a clear view for ''about a mile.'' There were two sealed beam headlights on the tractor operated by a control switch at the driver's foot. On the top of the cab were five clearance lights and one flood light, which is so fixed that it protrudes 45 degrees in the center of the cab. On the right side of the trailer front corner on the top is an amber clearance lamp, and on the same side up on the corner is a red clearance lamp. On the left side of the trailer, front end, upper corner, there is an amber clearance light, and on the left-hand side of the trailer, at the rear upper corner, there is a red clearance lamp. Roadruck, the

driver of the tractor and trailer, had driven on Torrence avenue at the place in question a great many times, and it is a reasonable inference from the evidence that he knew that Torrence avenue is a State road, a through street highway, and that there was a reflector caution sign on Michigan City road about 350 feet east of Torrence avenue, and a reflector State stop sign on the right side of that road about 50 feet east of the intersection; that he also knew that his well-lighted truck could be seen for blocks by a driver approaching Torrence avenue upon Michigan City road. Roadruck's eyesight was good. Schultz wore bifocal glasses all the time. It was a clear night and the roads were dry. About midnight on November 27, 1944, Roadruck brought his tractor and trailer into the main garage of Fleet Maintenance, Inc., at 755 W. Harrison street, Chicago. The tractor and trailer were then thoroughly examined as to braking condition, lights and stop lights, and were found to be in good condition. Roadruck left the garage at about 12:50 A.M., on November 28, en route to Logansport, Indiana. He was about forty-nine years of age, a temperate man, in good health, possessed of all his faculties, and was reputed to be a cautious and competent driver. The decedent Schultz was fifty-nine years of age at the time of the accident and was employed by the Indiana Harbor Belt Railroad. On the day before the accident he awoke about 5:30 A.M., left his home, drove to his work, worked all day and returned home about ten minutes after four P. M. He then drove with his wife to their son's home and returned to their home about 5:30 P. M., had dinner, and he left there at 7:30 P. M. From 9:15 that evening until 1:05 he was at a meeting "held in Hammond [Indiana] over the Veterans of Foreign Wars Hall" and during that period of time he played cards with Walter Rayski and several other men and then drove Rayski and George Murphy to their homes; he dropped Murphy off on State street,

in Hammond, and then dropped Rayski off at Burnham avenue and Warren street, Calumet City, which is about a mile and a half from the place of the accident. The evidence does not show what Schultz did between the time he left Rayski at the latter's home and the time of the accident. The impact of the collision was terrific and it awakened families in the neighborhood. Immediately after the accident two men reached the place, and a few moments thereafter two other men arrived there. The truck was then on Torrence avenue just south of Michigan City road. There is a Forest Preserve sign on the west side of Torrence avenue and about 40 feet south of Michigan City road. The trailer was on the pavement of Torrence avenue and in a north and south position. The tractor was jackknifed around and was headed in a northwest direction. The Mercury car was about 40 feet west of the tractor and headed into an embankment. It was headed ''in about a little southwest position, more west.'' The driver of the tractor and trailer was lying face downward in the ditch and about 8 or 10 feet west of the tractor. The left front door of the tractor was open. The driver of the Mercury was still in his car. Both men were dead. An examination of the tractor showed that its braking system was locked so tight that in order to move the tractor it was necessary to remove the pressure in the hydraulic system to relieve the tension on the brake drum. Both the tractor and the Mercury car were badly damaged.

In paragraph 2 of count II of plaintiff's complaint she alleges that defendant's intestate was operating a certain motor vehicle in a northwesterly direction along and upon Michigan City road at a point where said highway intersects and crosses Torrence avenue, and defendant, in his answer, admits the said allegations. Defendant states, in his brief, that ''Fred F. Schultz was driving his Mercury automobile west on Michigan City Road,'' and that the collision occurred

as the Mercury was practically across. Torrence avenue. He argues that it is equally reasonable to presume from the evidence that Schultz stopped at the stop sign as it is to presume that he did not; and that it was equally reasonable for the jury to presume from the evidence that defendant's deceased proceeded cautiously across Torrence avenue as it was to presume that he did not proceed cautiously. The argument ignores the rule that all reasonable inferences arising from the evidence must be taken most strongly in favor of the plaintiff. Roadruck had the right of way and was justified in assuming that a motorist driving on Michigan City road and approaching Torrence avenue would recognize that right and stop his automobile at the State stop sign on Michigan City road, and observe the situation before he entered the intersection. The jury was justified in inferring from the evidence that if Schultz had stopped at the stop sign and made any sort of observation the unfortunate accident would not have occurred; that had he stopped at the stop sign he could not have failed to see the illuminated tractor and trailer approaching the intersection, and, knowing that the tractor and trailer had the right of way, that it would be highly dangerous for him to then attempt to cross the intersection. It is clear that after Schultz entered the intersection he reached the path of the tractor and trailer. That Roadruck made a desperate effort to avoid the collision is demonstrated by the fact that the powerful braking system of the tractor was locked so tight that in order to move the tractor after the accident it was necessary to remove the pressure in the hydraulic system to relieve the tension on the brake drum. After a careful consideration of the instant contention of defendant we have concluded that the jury might reasonably infer from certain evidence that the accident resulted solely from the negligence of the deceased, Fred F. Schultz.

Appellant contends that ''the 'court erred in entering judgment in favor of the plaintiff, Fleet Maintenance, Inc., on motion of that plaintiff's counsel.'' This contention is clearly a meritorious one and it is somewhat surprising to find the able counsel for Fleet Maintenance, Inc., strenuously contending that we should affirm the action of the trial court in entering that judgment. They argue that ''the jury's verdict that Mrs. Roadruck, Administratrix of her husband's estate, is entitled to recover damages for the wrongful death of her husband, is tantamount to a finding that Fleet Maintenance, Inc., is likewise entitled to recover damages for the value of its truck, and conversely, if the Administratrix of Roadruck's Estate is not liable to the Administrator of Schultz's Estate, Fleet Maintenance could not be held liable to his Estate. The jury as the trier of the facts established by its verdict, that the decedent, Schultz, was negligent and that the decedent, Roadruck, was not negligent. These facts having been determined by the jury, it follows axiomatically that the defendant, Schultz, was guilty as to the claim of Fleet Maintenance, Inc., and that the plaintiff Fleet Maintenance, Inc. not negligent. `. . . There was no dispute as to the amount of damages to the truck in question. . . . Hence, there being no issue of fact, the court was justified in assessing the damages of the plaintiff, Fleet Maintenance, in accordance with the evidence''; that ''the jury having found the plaintiff Roadruck's Estate not guilty of any negligence in driving the truck and not being responsible for the fatal accident, the court properly held that the verdict in favor of Roadruck's Estate was equivalent to a verdict in favor of Fleet Maintenance, Inc., and entered judgment accordingly''; that ''the trial court had the authority and the duty to correct the verdict of the jury and to enter judgment in favor of the plaintiff, Fleet Maintenance, Inc.'' The

counsel state that our courts have held in a number of cases that "the court has the power to correct a verdict of a jury whenever the manifest intention of the jury is sufficiently certain." That the court has the power to put a manifestly irregular or defective verdict in such form as to make it conform to the intention of the jury and carry their findings into effect where the intentions can be ascertained with certainty, is sound law. In each of the cases cited by counsel in support of their instant contention there was a verdict returned by the jury. In *Wilce Co. v. Royal Indemnity Co.*, 289 Ill. 383, the jury returned a verdict finding the issues for the plaintiff and assessing "the defendant's damages at the sum of $150, with interest thereon from October 15, 1914, to date, amounting to $19.86, and including costs of suit." (p. 390) The trial court corrected the verdict to read, "assess the plaintiff's damages at the sum of $169.86" (p. 391), and entered judgment on the verdict as corrected. The Supreme court, in sustaining the action of the trial court, stated (p. 391): "Clearly, after finding the issues for the plaintiff the jury could not have intended to assess damages against it in favor of defendant, in face of the fact that defendant admitted its liability to plaintiff for the premiums paid and interest thereon. What the jury's verdict meant was that the jury found the issues for the plaintiff and assessed its damages against the defendant, and not that it assessed damages in favor of defendant against plaintiff, in whose favor the issues were found." The opinion further states (p. 392): "The verdict contained the substance of a good return and the court had power to amend it in matter of form. *Law v. Sanitary District of Chicago,* 197 Ill. 523." In *Italian-Swiss Ag. Colony v. Pease,* 194 Ill. 98, the jury returned a verdict as follows (pp. 106, 107): "We, the jury, find that Phillip L. Raphael was the agent of the Italian-Swiss Agricultural Colony, and was served with a summons in the above entitled cause

on November 12, 1898, and we assess the plaintiff's damages at the sum of sixteen hundred and eighty-four dollars ($1684)." The trial court allowed the verdict to be amended so as to read as follows (p. 107) : "We, the jury, find the issues herein in favor of the plaintiff. We find the debt to be eighteen hundred (1800) dollars, and we assess the plaintiff's damages at the sum of sixteen hundred and eighty-four (1684) dollars." In sustaining the action of the trial court the Supreme court stated (p. 108) : "The authority rests in the court to put a verdict in form where it is, on its face, good in substance and does not depend upon the consent or knowledge of the jury. (28 Am. & Eng. Ency. of Law, 372.)" In *Western Springs Park Dist. v. Lawrence,* 343 Ill. 302, there was a verdict returned by the jury. The Supreme court, in passing upon the contention that the trial court erred in amending the verdict, stated (p. 310) that they did not feel called upon to decide this question for the reason that (p. 311) "Even if there was error committed, a party cannot complain of an error which he induced the court to make or to which he consented." While it is true that the court stated certain principles of law, none stated supports the instant contention of Fleet Maintenance, Inc. In *Minot v. Boston,* 201 Mass. 10, a jury returned a verdict for the petitioners and the Supreme court of Massachusetts was called upon to pass upon the power of a trial court to amend a verdict after it had been rendered and recorded and the jury had been discharged. The opinion states (p. 13) :

". . . Whether the case be civil or criminal, the verdict which is defective only in form may be worked 'into form' so that 'it may serve.'

"But there is one important limitation to this rule; and that limitation is that the amendment in all cases must be such as to make the verdict conform to the real intent of the jury; 'the judge cannot, under the disguise of amending the verdict, invade the exclusive

province of the jury, or substitute his verdict for theirs.' *Acton v. Dooley,* 16 Mo. App. 441, 449. After the amendment the verdict must be not merely what the judge thinks it ought to have been, but what the jury intended it to be. Their actual intent, and not his notion of what they ought to have intended, is the thing to be expressed and worked out by the amendment.''

It has been often stated that the controlling distinction between the power of the court and that of the jury is that the former has the power to determine the law and the latter to determine the facts, and that this distinction must always be borne in mind. In the instant case the trial judge treated the blank form of verdict that was returned by the jury, unsigned, and in the same condition that it was in when it was handed to the jury by the court, as a verdict of the jury, and, proceeding upon the theory that he had the right to correct a verdict of the jury, he evolved the so-called verdict of the jury upon which the judgment in favor of Fleet Maintenance, Inc., was based. The so-called ''verdict of the jury'' was a creation of the trial court, of which the jury had no knowledge, and the contention that the judgment in question was based upon a verdict of the jury borders upon the absurd. The action of the trial court invaded the exclusive province of the jury and deprived defendant of his constitutional right to a trial by jury.

Counsel for defendant contends that as the form of verdict to be filled out by the jury in case they should find against defendant and in favor of plaintiff Fleet Maintenance, Inc., was returned in blank such action by the jury is tantamount to a finding of not guilty as to Fleet Maintenance, Inc., and therefore the judgment in favor of Fleet Maintenance, Inc., against Maurice J. Schultz, Administrator of the Estate of Fred F. Schultz, deceased, should be reversed without remanding. We hold that the jury did not render any

verdict in the case of Fleet Maintenance, Inc., against Maurice J. Schultz, Administrator of the Estate of Fred F. Schultz, deceased.

Defendant contends that the court erroneously permitted several witnesses produced by Ione B. Roadruck, Administratrix of the Estate of David Roadruck, deceased, to be cross-examined by the attorney for Fleet Maintenance, Inc. Counsel for defendant devote but a few lines to this contention and cite no authorities in support of it. The alleged improper cross-examinations are not even set up in the argument. We have examined the parts of the abstract to which our attention is directed and are satisfied that the contention that defendant was so prejudiced by the cross-examinations in question that the judgment should be reversed for that reason alone, is without the slightest merit.

The judgment of the Superior court of Cook county entered June 14, 1946, in favor of Ione B. Roadruck, Administratrix of the Estate of David Roadruck, deceased, and against Maurice J. Schultz, Administrator of the Estate of Fred F. Schultz, deceased, is affirmed.

The judgment of the Superior court of Cook county entered July 19, 1946, in favor of Fleet Maintenance, Inc., and against Maurice J. Schultz, Administrator of the Estate of Fred Schultz, deceased, is reversed, and the cause is remanded for a new trial.

*Judgment entered June 14, 1946, affirmed.*

*Judgment entered July 19, 1946, reversed, and cause remanded for a new trial.*

FRIEND, P. J., and SULLIVAN, J., concur.